## Ms. Margaret Raben

**MS. RABEN:** That is absolutely true.

**THE COURT:** You never discussed that with either Mr. Gurewitz or Mr. Jones?

**MS. RABEN:** Never. I had no --

**THE COURT:** Once you were in trial, did Mr. Gurewitz ever come to you and say, hey, you know, I've got a letter that I got a year ago from the prosecutors that Jones has impeaching information about Hmimssa?

**MS. RABEN:** Never.

**THE COURT:** Well, I'll have to ask Mr. Gurewitz why not.

He never gave it to you?

**MS. RABEN:** Never.

**THE COURT:** He is your partner.

**MS. RABEN:** He is my partner.

Had he come to me, my position would have been immediately compromised and I knew that. I would have brought it to the attention of the Court.

I didn't get appointed into this case until jury selection.

**THE COURT:** First you learned about this letter then was after the trial?

**MS. RABEN:** Yes. When I received a copy from Mr. Swor.

**THE COURT:** Let me ask you another question.

USA V Koubriti, et al 01-80778

## Ms. Margaret Raben

Were you at this meeting when Butch Jones' name came up in the context of Mr. Amberg?

**MS. RABEN:**  Yes.

**THE COURT:**  What did you say about Mr. Jones?

**MS. RABEN:**  I don't believe I said anything.

My -- the context in which it came up was that Mr. Amberg's client who, for a number of reasons we were not going to pursue this, but that his mention of Mr. Jones was just one more thing that was likely not credible enough to be pursued, given the context in which it was --

**THE COURT:**  Did you say anything to the effect, Butch Jones, we're never going to call him?

Or in some way in making this determination, indicating Mr. Jones is somebody that you would not want to put on the stand?

**MS. RABEN:**  No, because I don't have that knowledge of Mr. Jones or any aspects of Mr. Jones' case that would allow me to make that determination.

**THE COURT:**  Is that everything you know about this?

**MS. RABEN:**  Your Honor, when Mr. Gurewitz is appointed on a CJA case and when I'm appointed on CJA case, we run those cases independently of each other.  It is a different matter when somebody retains the PLC.  Although not -- it's more --

153

## Ms. Margaret Raben

**THE COURT:** I'm not sure that, legally, it is.

**MS. RABEN:** But it's the way he and I have always practiced.

He represents his clients, I represent mine.

And I know that, perhaps, there was some assumption that I was actively involved in the litigation related to Mr. Jones. And that is simply not true.

**THE COURT:** Well, you were involved. You may not have been involved, to a great extent.

**MS. RABEN:** I was there on a couple of occasions.

**THE COURT:** All right.

I want you to brief the issue of whether or not, as defense counsel for Mr. El Mardoudi, you had constructive knowledge through Mr. Jones having -- Mr. Gurewitz having this letter.

**MS. RABEN:** Is there anything else, Your Honor?

**THE COURT:** No.

Mr. Swor, do you have anything to add to this?

**MR. SWOR:** I guess I'd like to say that for Ms. Raben's presence, I'm grateful the government did not turn over the Butch Jones documents.

I'd indicate to the Court when we had this meeting about Robertson, not only were we -- did we become aware of the Court's history with Mr. Robinson (sic) his improbable credibility.

**USA V Koubriti, et al 01-80778**

154

## Mr. William Swor

But at the time, Robertson was and is currently housed at FCI Terre Haute. And it seems extremely unlikely the Court was going to suspend the trial to allow us time to go down there and interview him, okay.

Now had Mr. Jones' letter, you know -- Mr. Jones letter contains information.

THE COURT: Just a minute, Mr. Swor. Let's -- I don't want to argue about Mr. Jones' letter. I'm looking for the state of your knowledge.

MR. SWOR: I will tell the Court, unequivocally, that Mr. Jones was a footnote in the comment Mr. Amberg told us.

THE COURT: You're looking at something.

MR. SWOR: It's a handwritten note I made just to prepare for today.

THE COURT: But not contemporaneous.

MR. SWOR: It was not a contemporaneous note.

Mr. Amberg told me that Roberts (sic) had told him that an individual named Youssef told him he was going to lie for the government and that Butch Jones knew something, too.

THE COURT: Why didn't you follow up?

MR. SWOR: Well, we initially --

THE COURT: Your client was one of the two lead defendants in this case.

Why didn't you follow up?

## Mr. William Swor

**MR. SWOR:** The first person to follow up was with Robertson we did commence the follow up with Roberts son we learned about Robertson's history with the court, we learned about Robertson instability.

The fact that Robertson was too far away to run down and interview on a Saturday or a Sunday led us to believe that Robertson may have been just looking for a ride up to Michigan. Okay.

Since we had no --

**THE COURT:** I'm not sure Robertson enjoyed all of his court experiences in this court.

**MR. SWOR:** Nor did you.

**THE COURT:** Nor did I.

**MR. SWOR:** So that left without a reason to credit Mr. Robertson, okay.

There was no reason to believe at that point --

**THE COURT:** Are you telling me because Robertson was the source of the Butch Jones' knowledge, you didn't pursue Butch Jones?

**MR. SWOR:** That's correct.

As Mr. Thomas said, we were in trial. We were working seven days a week. We had to husband our time.

And it did not appear to be -- we also got a letter from a fellow named Flowers out in Iowa who made similar statements about Hmimssa.

## Mr. William Swor

THE COURT:  I'm aware of that.

Why didn't you pursue that?  Well, maybe you did.

MR. SWOR:  Well --

THE COURT:  Maybe you did.

MR. SWOR:  Okay.  So I mean --

THE COURT:  In fact I -- all right.

MR. SWOR:  So in terms of not following up with Butch Jones, you know, it's not like Butch Jones is unknown, okay.

And if Robertson turns out to be a bust, then, you know, the reference to Butch Jones may have either been braggadocio, nonsense or just another false lead.  And we just didn't have the time to go chasing blind leads.

THE COURT:  Thank you.

Do you have any other knowledge about either Roussi or Jones?  Any other knowledge?

MR. SWOR:  No.

Prior to, you know --  I heard from my client about Mr. Roussi when we went up to Saginaw and interviewed him.

I came home, I wrote Mr. Straus the letter.

THE COURT:  Did your client know Mr. Roussi?

MR. SWOR:  No.  Someone told him that Roussi had been at the Wayne County Jail for eight months as a potential witness.

I wrote Mr. Straus asking for confirmation or

## Mr. William Swor

asking for any 302 on Roussi.

THE COURT: Well, he was deported in April of 2002. He couldn't have been there.

MR. SWOR: Until Mr. Helfrick stood up and said that, I didn't know that.

THE COURT: All right.

MR. SWOR: The letter I sent was after trial, so there was no opportunity to chase him.

THE COURT: All right.

Mr. Soles, you're usually loquacious. You've been awfully quite. I know you're itching to make argument.

Do you have any further personal argument?

MR. SOLES: I never saw the letter, heard of the letter.

THE COURT: Did you know anything about Butch Jones?

MR. SOLES: I don't remember hearing anything about Butch Jones.

I remember talking to Mr. Amberg about a man named Robertson.

THE COURT: Do you remember him mentioning Butch Jones?

MR. SOLES: I don't remember that.

I remember Mr. Amberg telling us about how you and Robertson had problems.

USA V Koubriti, et al 01-80778

## Mr. Leroy Soles

And how Robertson -- you thought he might have had some mental problems, about problems that happened here in court, arguments and that.

THE COURT:  I had him evaluated, based on his lawyer's request.

MR. SOLES:  Right.  Well, that's what I remember.

THE COURT:  Okay.

MR. HELFRICK:  I don't -- that's what I remember. I remember discussions with Amberg about Robertson.

About your --

THE COURT:  I ought to say, for the record, since it's been raised, at least elliptically.

I have indicated to counsel I had some recollection about Butch Jones' name coming up at some point during the trial.

Thinking back on it and talking to my law clerks, I think that Mr. Amberg may have been the one who said, you know, my client, Robertson, is talking about crazy stuff, all kind of people having crazy knowledge.

You know, Mr. Amberg was talking about a lot of things.

MR. SOLES:  I remember talking to Mr. Amberg about Mr. Robertson.

THE COURT:  All right.  So it may now well not have come from defense counsel.

**Mr. Harold Gurewitz**

Anything else to add?

**MR. SOLES:**  No.

**THE COURT:**  Mr. Gurewitz, once Mr. Raben was in the case, knowing that you had in your trial, potentially exculpatory information from Ms. Raben's client, why didn't you talk to him?

**MR. GUREWITZ:**  First, judge, I'm not sure that I thought about the fact I had this letter in my file when she was first appointed.

I think I did think about it at some point during the course of the trial when I became aware from, I think, primarily from the newspapers.

**THE COURT:**  About Mr. Hmimssa?

**MR. GUREWITZ:**  That's right.

I decided at that time that it was in my client's interest not to become part of this case and not to disclose the information to anyone in connection with the case.

**THE COURT:**  You made a conscious decision, even back then that -- even back then, during the trial, you made a conscious decision that you did not want Mr. Jones to be part of this case?

**MR. GUREWITZ:**  Yes.

**THE COURT:**  For the reasons we've discussed?

**MR. GUREWITZ:**  Yes.  That's right, Your Honor. The government filed the notice of intention to seek the

death penalty in February of this year.

And at that point the stakes, obviously, are so much different in his case.

It just seemed to me it was not in his interest to be part of, in any way, to the extent that I had an ability to effect that outcome.

**THE COURT:**  Weren't you concerned about her status as your partner?

**MR. GUREWITZ:**  Your Honor, I didn't see any way I could disclose it to her.

I'm thinking about this.  The only other alternative thing I could have done was, perhaps, consulted with a third-party, not her, but someone else, ask for an opinion.  Maybe I should have.

I should say I did not share this with her.  I did not share the subject matter of it with her.

And I didn't know about the fact that this had been disclosed by the United States Attorney's Office until she told me about it when it was within the last week.  I just had no information about that.

The only other thing that I think I would have to add to this --

**THE COURT:**  You're going to file a brief on the privilege assertion?

**MR. GUREWITZ:**  Yes.  Any information about this

letter first came to my attention.

THE COURT: I'd like to --

MR. GUREWITZ: Don't -- I don't remember receiving a phone call from Rick Convertino before I got the letter. It's entirely possible I did. I don't remember having a conversation with him after I did.

I received the letter by fax. I do remember having a conversation with Joe Allen on at least one occasion after I got the letter, essentially, complaining to him that Rick Convertino was ignoring my phone calls, wouldn't talk to me about it.

It is certainly entirely possible -- I believe probably it did happen, I talked to him, initially, and I wanted to talk to him again and didn't have the opportunity to do that.

That's it.

THE COURT: All right. Mr. Allen?

MR. STRAUS: I need to consult for a moment, Your Honor.

THE COURT: While they're consulting, any other defense counsel have anything to add?

MR. THOMAS: Judge, can I ask, in some fashion, that if those letters do exist, that they be preserved?

THE COURT: Which letters? I'm sorry.

MR. THOMAS: The Butch Jones letters.

USA V Koubriti, et al 01-80778

**THE COURT:** The notes?

**MR. THOMAS:** His contemporaneous notes or whatever other --

**THE COURT:** Mr. Gurewitz, file those under seal with the Court, please.

**MR. GUREWITZ:** Yes.

**THE COURT:** While they're conferring, any other prosecutors have anything to add?

**MR. STRAUS:** I guess -- just one moment, Your Honor.

(A discussion was held off the record)

**THE COURT:** Well, Mr. Straus, this is for your benefit, while they are conferring.

I don't want anymore surprises. In fact, I didn't want any surprises in this case, that's why I throughotu the case, was as painstakingly as I could be in ensuring that all information, at the very least, was vetted through the Court.

I'm going to instruct you -- I know you've got a lot on your plate.

Mr. Gershel, I think you and Mr. Collins need to assist Mr. Straus in ensuring that this is done; and Mr. Tukel, you, as well.

I want a thorough review of every document in this case to make a determination -- Mr. Capone, you can help, too, if you want, as to whether there are any other documents

out there that are even close to being arguably *Brady* or *Giglio* material.

And if there are any documents that touch on Youssef Hmimssa's credibility or the substance of his testimony, I want those turned over to the Court or turned over to defense counsel.

I'm going to get the bottom of this and I don't want this to be a thousand cuts.  I want it done.  This should have been done a year ago.  I assumed it was.

Continually, I pushed Mr. Convertino and I pushed Mr. Corbett to ensure everything is turned over.

And I think all of you know me well enough.  I was not subtle about with I wanted turned over.

I want the United States Attorneys Office, along with the FBI, to go through the files.  I trust you, as officers of the court, just as you've turned over at great pains, that's evident here in the court today, these two documents.

I want you to go through every document in the case and ensure that there are no other documents.

I am not going to make a decision on the new trial motion until I have received an assurance.

And if there is anything else even close to *Brady* or *Giglio*, either turn it over directly to defendants or turn it over to the Court for independent review.

**USA V Koubriti, et al 01-80778**

Mr. Collins, is that clear?

MR. COLLINS: That is clear, Your Honor. We will do it.

THE COURT: All right. Was there something else you wanted to add?

MR. ALLEN: Yes, Your Honor. I wanted to let Mr. Straus know, if, in the interest of being complete, the Court should inquire as to Mr. Rabaut his knowledge as to the letter.

THE COURT: Good suggestion, Mr. Allen.

Mr. Rabaut? I've asked Mr. Hmimssa. I suppose I should ask you as well.

What do you know about this?

MR. RABAUT: Your Honor, the first I became aware of any indication of the letter was when I appeared here Monday to file a memorandum with the Court on this matter.

And your clerk, Sara, made me aware.

THE COURT: It wasn't on this matter on the sentencing of Youssef Hmimssa.

MR. RABAUT: Sentencing. Your clerk, Sara, made me aware an issue had been raised.

And that's the first I ever saw the letter was when I met with you on Tuesday afternoon about the sentencing or Tuesday morning.

THE COURT: Mr. Hmimssa never mentioned any of

USA V Koubriti, et al 01-80778

## Mr. Steven Rabaut

this to you?

MR. RABAUT: Mr. Hmimssa never mentioned anything. For the times I sat in on debriefings with Mr. Hmimssa, it never came up.

THE COURT: Never came up with Mr. Corbett or Convertino with you as well?

MR. RABAUT: That's correct, Your Honor.

THE COURT: All right. Mr. Straus?

MR. STRAUS: Just one more matter, I think, just to remind the Court about Mr. Morgan.

THE COURT: Mr. Morgan. Mr. Morgan, I know you thought you were out of this, but this is sort of like the tar baby. Once you start punching, you never get free.

Do you know anything about this?

MR. MORGAN: No, sir. I first became aware of the letter after it was disclosed and the defense attorneys began discussing it.

THE COURT: Did you know anything during the trial about Mr. Jones and the fact at that time he may have information about Mr. Hmimssa?

MR. MORGAN: No. Nothing. I knew of Mr. Jones. I prosecuted him twenty some years ago.

THE COURT: All of us know about Mr. Jones.

MR. ALLEN: Also, for the record, Mr. Morgan represents a codefendant who has been severed from Mr. Jones

in the Jones case.

**THE COURT:** Thank you. All right. Folks, this is a fine kettle of fish.

I think I can say, at least speaking for myself, that this is the most unpleasant task that I've had in almost 14 years as a judge.

At some level, it is going to call upon me to make determinations about the veracity of lawyers who I have a great deal of respect for.

Perhaps, I won't have to reach that issue. Certainly is an issue in the case in terms of whether or not there was prosecutorial misconduct and whether or not there was an order given to turn over these documents.

All I can say is, this is what happens when lawyers take it upon themselves to make decisions that should be made, in the first instance, by the Court.

The government does not have an unfettered, unilateral right to make *Brady* determinations when there is a *prima facie* indicia on the face of documents that there is either exculpatory evidence concerning defendants or impeaching evidence concerning key witnesses in the government's case.

The government, as I had this conversation with Mr. Corbett on numerous occasions during the trial and Mr. Convertino, that is not a decision the government gets to

make. I don't think any of you sitting there seriously disagree.

The threshold question, of course, is, is there any information related to the case, is any of it exculpatory.

Obviously, if it's irrelevant to the case, if it's not a clearly, on its face -- if it doesn't have something to do with a witness or it doesn't have something to do with the substantive issues effecting guilt or innocence of defendants, that's one thing.

These two documents, particularly, the Jones document, on their face, clearly, I think Mr. Gershel and Mr. Allen and Mr. Capone indicated this as much in their comments to the Court, clearly contain, on their face, indicia of both exculpatory and impeaching material.

I understand the government has legal arguments to make in their briefs and I expect to receive those.

But as to whether or not these documents should have been turned over, there's no question in the Court's mind that the should have been turned over.

Having said that, that doesn't get defendants all the way to a new trial.

The test for whether a new trial should be granted for failure to turn over evidence has been summarized by the Supreme Court.

Any favorable evidence, regardless of

whether requested or not, is material.

If there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.

Obviously, if there was no chance whatsoever that Mr. Jones would have either testified or had the notes turned over, in other words, if I uphold the privilege that Mr. Gurewitz has asserted, in which he said he would have asserted from the beginning, and, in fact, his testimony now indicates -- his statement indicates that he had this in mind even when Ms. Raben was appointed -- yes?

**MR. GUREWITZ:** Clarify that?

What I meant was that it was my view -- with my view at that time, I did not want him to be involved in this case.

To say that I did not focus upon the Fifth Amendment issue at that time, that did not enter into my thinking. I didn't get to that point.

I knew I did not want him involved in this case.

**THE COURT:** But I asked you before whether or not you would have permitted defense lawyers to interview him.

I assume the Fifth Amendment would have occurred to you at some point then.

**MR. GUREWITZ:** That's right. Focusing it all now,

USA V Koubriti, et al 01-80778

that is my judgment.  I can say I didn't go through all that thought process back then.

**THE COURT**:  All right.

At any rate, if Mr. Jones would not have been available as a witness, would not have been available to authenticate the letter, would not have been available to authenticate the notes, that makes a finding of reasonable probability that the evidence -- had the evidence been disclosed to the defense, the result of the proceeding would have been different.  It makes it much more problematic.

I understand the arguments that defense counsel wish to make in briefs that this may have led them to other evidence or other witnesses, and I will entertain those arguments.

But the bottom line here at the close of the hearing today is, the simple fact that the government had the documents, knew about the documents, did not turn them over, made a conscious decision not to turn them over to the defendants, does not automatically require the grant of a new trial.

It is certainly probative on that issue, but it does not automatically require a new trial.

I've got some difficult decisions to make.  Mr. Straus, defense counsel, I want briefs on these issues, including the Fifth Amendment privilege issues, by close of

business a week from tomorrow -- a week from today, the 19th.

I want the sealed information that we've discussed, including the affidavits from Mr. Gurewitz and Mr. Allen and Mr. Corbett, on the issues we discussed in chambers concerning Mr. Jones, filed at the same time.

Counsel will have one week from Friday.  Well, that's Christmas.  Give you guys a break.

I'll give you until the 28th to file responses -- 29th.

In light of this, obviously, sentencing will not go forward on Tuesday.

Is there anything to be gained on Tuesday by having argument on the remaining new trial issues?

**MR. HELFRICK:**  Yeah.  I think, realistically, under the cases the Court's going to be relying on, all of that is going to have to be taken into consideration.

**THE COURT:**  They're of a piece, aren't they?

**MR. HELFRICK:**  All part of a pattern.

**THE COURT:**  Frankly, I don't require any further -- I've got your brief.  I got Mr. Straus' brief.  Now I don't require any further argument.

If counsel want argument on the remaining issues, you know I never turn down a good argument.  But I'll leave it at this.

If counsel want argument on the remaining issues, you contact Ms. Fischer, okay?

MR. HELFRICK:  We're not coming on Tuesday?

THE COURT:  No, we won't.

But if you want argument, we're going to have to do it at after the briefing, okay?

Any other issues remaining open?

MR. STRAUS:  None that the government is aware of, Your Honor.

MR. RABAUT:  May I make inquiry?  This delays further Mr. Hmimssa's sentence?

THE COURT:  I think you can assume it will.

Anything else?

MR. SWOR:  No, sir.

(Court was in recess at 3:41 p.m.)

CERTIFICATE OF COURT REPORTER

I certify that the foregoing is a correct transcript from reported proceedings in the above-entitled matter.

Carol S. Sapala, FCRR, RMR                 Dec 16 2003

USA V Koubriti, et al 01-80778