UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

Government.

v.

**AHMED HANNAN**
**KARIM KOUBRITI,**
**YOUSSEF HMIMSSA**,
**FAROUK ALI-HAIMOUD,**

defendants.

_____/

**MOTION TO CONDUCT DEPOSITIONS**
**MOTION FOR DISCOVERY AND MOTION FOR**
**PRODUCTION OF DOCUMENTS**

**BEFORE THE HONORABLE GERALD E. ROSEN**
United States District Judge
860 US Courthouse & Federal Building
231 Lafayette Boulevard West
Detroit, Michigan
**Monday, October 28, 2002**

**APPEARANCES:**

**RICHARD CONVERTINO, ESQ.,**
Assistant United States Attorney
211 West Fort Street
Detroit, MI 48226
On behalf of the Government.

Special Agent Michael Thomas,
FBI, Detroit Division.
- - -

Stenographically reported by:  Carol S. Sapala, RMR-FCRR

USA V. KOUBRITI, ET AL. 01-80778

APPEARANCES:    (continuing)


        **RICHARD HELFRICK**, Esq.
        **LEROY SOLES**, Esq.,
        Federal Defender Office
        645 Griswold Street, Ste. 2255
        Detroit, MI 48226
                On behalf of Defendant Koubriti.

        **JAMES C. THOMAS**, Esq.
        2632 Buhl Building
        Detroit, Michigan 48226
                On behalf of Mr. Hannan.

        **KEVIN ERNST**, Esq.,
        645 Griswold, Ste. 4100
        Detroit, Michigan 48226
                On behalf of Defendant Ali-Haimoud.

USA V. KOUBRITI, ET AL. 01-80778

# C O N T E N T S

**IDENTIFICATION**                                                    **PAGE**

**Motion For Production of INS and Customs Files**

Argument by Mr. Thomas                                                   6

Response by Mr. Convertino                                              7

The Court's Ruling                                                        8


**Motion For Discovery of Expert Opinions**

Argument by Mr. Convertino                                               9

The Court's Ruling                                                       10

Response by Mr. Soles                                                    11


**Motion to Conduct Depositions of Naser Ahmed and Nabil Al Marabh**

Argument by Mr. Thomas                                                   16

Response by Mr. Convertino                                              20

The Court's Ruling                                                       27


Certification of Court Reporter                                          33

# E X H I B I T S

**IDENTIFICATION**                    **MARKED**    **RECEIVED**

N O N E       M A R K E D

USA V KOURRITT ET AL 01-80778

Detroit, Michigan

Monday, October 28, 2002

10:36 a.m.

THE LAW CLERK: Calling case number 01-08778, United States versus Karim Koubriti, Ahmed Hannan, and Farouk Ali-Haimoud.

THE COURT: Appearances, please.

MR. CONVERTINO: Morning, Judge.

Rick Convertino, on behalf of the United States.

MR. SOLES: Leroy Soles, Federal Defender Office, on behalf of Mr. Koubriti.

MR. HELFRICK: Richard Helfrick, FDO, on behalf of Mr. Koubriti. Good morning.

MR. THOMAS: James Thomas, on behalf of Ahmed Hannan.

MR. ERNST: Kevin Ernst, on behalf of Mr. Ali-Haimoud.

THE COURT: I see we have a number of interpreters here in the courtroom.

One interpreter today. Mr. Habboo? Yes.

If you would stand. Please, raise your right hand.

(Whereupon the interpreter was then sworn)

THE COURT: We have three motions pending today brought by the defendants.

First, is a Motion For the Production of INS and

## Motion for INS and Customs' Files

Customs Files of a Mr. Ali Mohammad Ahmed.

Second, a motion for discovery of the opinions of the experts that the Government contemplates using at trial.

And, third, is a Motion For Leave To Conduct Two Depositions; one of Mr. Nabil Almarbh and the second, Mr. Naser Ahmed, and for release of discovery relating to statements made by these witnesses.

Who is going to argue each of these motions? Let's start with the INS and Customs motions.

Mr. Thomas?

MR. THOMAS: Your Honor, James Thomas, on behalf of Mr. Hannan.

Your Honor, we had filed a motion for the production of the INS and Customs files of Ali Mohammad Ahmed.

Ali Mohammad Ahmed is alleged by defendant Hannan to have been the person who was the person in possession of the so-called Day Planner.

It is our belief that Mr. -- Mr. Hannan's belief is that Mr. Ahmed was the author of some of the writings that were in that book.

THE COURT: What do you anticipate or hope to find in these files?

MR. THOMAS: I expect to find -- I should say to the Court before we go much further, that on October 23rd, a

USA V KOUBRITI ET AL 01-80778

## Motion for INS and Customs' Files

discovery package was sent out and it was what purported to be the Immigration and Naturalization Service file of Mr. Ahmed.

I've reviewed that and what was hoped to have been received from that, is writings, either in Arabic or in English, of Mr. Ahmed.

THE COURT:  For purpose of doing what?  Of handwriting analysis and compare it to the handwriting in the Day Timer?

MR. THOMAS:  That's correct, in the Day Planner.

What we have not received is a Custom file. I don't know whether or not that has been sought.  But it would be important for me to gather all known writings of Mr. Ahmed.

These two areas, whether be INS or Customs, are areas are in the control of the Government.

Other known writings.  I guess, I'm left for my devices to try to find those, at least as relates to those two specifics things.

I have received the Customs -- I'm sorry, the INS file, but I'm still looking for the Customs' file.

THE COURT:  Mr. Convertino, what can you tell the Court?

MR. CONVERTINO:  Thank you, Judge.

Mr. Thomas says the INS file has been turned over. The total INS file has been turned over to all three defense

## Motion for INS and Customs' Files

attorneys.

The Customs files are being searched now.  They'll be turned over.

THE COURT:  Did you anticipate a problem in turning those over?

MR. CONVERTINO:  No, sir.

THE COURT:  All right.

When did you anticipate you can make these available?

MR. CONVERTINO:  Well, that assumes that there's anything to make -- to be made available, judge.  If there is, as soon as I get them; the same day.

THE COURT:  Would you file a response either way?

In other words, if there is no file, would you file a simple response indicating that there is no Custom's file?

MR. CONVERTINO:  Yes, sir.

THE COURT:  If there is, I'll assume that you are going to turn those files over to the defendants, unless you file a motion seeking protection of those files.

And in that case, I would ask that you follow the protocol -- the discovery protocol that we've set up in the case.

MR. CONVERTINO:  Yes, sir.

THE COURT:  In other words, submit that to the Court along with a brief, explaining the reasons why they're

USA V KOURRITI ET AL 01-80778

## Motion For Expert Opinions

being withheld.

MR. CONVERTINO:  Yes, sir.

MR. THOMAS:  That satisfies me.

Now, Your Honor, the only other issue I can address to the Court is, we requested Rule 15 depositions.

THE COURT:  We've got -- we've got the expert the issue of the expert opinions.

MR. THOMAS:  Would you rather do that first?

THE COURT:  Why don't you stay there, because I think you object to the reports of the experts under Rule 16(a)(1)(E).

MR. CONVERTINO:  No, sir.

THE COURT:  When did you anticipate that those will be available?

MR. CONVERTINO:  Judge, we are calling experts in town from various parts of the country and the world.

THE COURT:  Just so the record's clear, my understanding is that the three experts that you're going to be offering are supervisory Special Agent Paul F. George --

MR. CONVERTINO:  Yes, sir.

THE COURT:  -- Lieutenant Colonel David R. Denning --

MR. CONVERTINO:  I believe so, sir.

THE COURT:  -- Walid Anthony Phares, Ph.D.

MR. CONVERTINO:  Yes, Judge.

USA V KOUBRITTI   ET AL  01-80778

## Motion For Expert Opinions

There's a possibility that Lieutenant Colonel Mary Peterson will be an expert.

THE COURT:  What will she be testifying about, if she does testify?

MR. CONVERTINO:  Either will be Lieutenant Colonel Mary Peterson or Lieutenant Colonel Denning who testifies.

THE COURT:  You're not going to offer both.

MR. CONVERTINO:  No, sir.

THE COURT:  Offer one or the other.

MR. CONVERTINO:  There will be additional expert testimony, and I'm not sure by whom, regarding the documents. It will be someone from FBI headquarters.

THE COURT:  Make a report available on that person then.

MR. CONVERTINO:  We already have made those reports available.  That's why, judge, that I didn't assume that those would be included in the experts.

But those reports, for instance, the fingerprint analysis, has been made available.  Those are the other experts that I'm speaking about.

THE COURT:  I see.  Okay.

All right.  Well, then, with respect to these first two motions, the Court will grant them, subject to the conditions the Court has reflected, with respect to the Custom's file.

USA V KOURRITT  ET AL 01-80778

## Motion For Expert Opinions

The Court will grant those motions.

Mr. Soles, do you wish to be heard?

MR. SOLES:  Yes.

The only thing on the expert motion.

We're requesting a summary and we need that now, because without -- that's the crux of their case with respect to terrorism.

And it seems to me that we need that now so we can look at it and see if there's some experts we want to call. But we have no idea what they're going to even talk about.

We know about the fingerprints and we know about his handwriting.

And -- but with respect to these three experts that you've mentioned, we have no idea what they're going to say and we need that now.

THE COURT:  Mr. Convertino, with respect to these three experts, could you just briefly advise defense counsel and the Court, the subject matter that they're going to testify about and when we might reasonably expect their Rule 16 Reports?

MR. CONVERTINO:  Judge, I would be able to provide those reports, I would say, by December 1st.  There will be a summary of what they testify to.

The summary of Walid Phares will regard his knowledge and expertise regarding Salafists, Takfiris, the

## Motion For Expert Opinions

importance of various pieces of evidence he has reviewed and will continue to review.

THE COURT:  Will identify or he will identify those pieces of evidence in that summary report?

MR. CONVERTINO:  The Court -- if the Court orders that, he will.

MR. SOLES:  Your Honor?

THE COURT:  I think that, that's appropriate.

MR. SOLES:  Given the present trial date we have, December is no good for us.  That's, that's --

THE COURT:  It's almost two months before trial. I think our current trial date is January 21st.

MR. SOLES:  That's not much time.

THE COURT:  Why don't you wait, see what he's got before you decide it's not enough time.

If it's necessary to seek an adjournment --

MR. SOLES:  We might not want to do that.  You know, these people are still -- but the -- when he filed the -- when he filed his notice saying -- giving us his resumè, certainly, he knew what they were going to say.

We need that now so we can start without -- if I may.  We can't prepare.

THE COURT:  He may still be reviewing the evidence.

If, when you receive the reports, there's not

## Motion For Expert Opinions

sufficient time for you and your experts to address those issues, then you can come and file a motion to --

MR. SOLES:  We can't even get experts to see what they're going to say until we know --

THE COURT:  Thank you, Mr. Soles.

MR. SOLES:  But do you understand, Your Honor --

THE COURT:  Thank you, Mr. Soles.

Thank you.  December 1st.

MR. CONVERTINO:  Yes, sir.

THE COURT:  All right.

And let me suggest, Mr. Convertino, we're talking about three reports.

If you have any of the three reports available before December 1st, you should produce those immediately upon their completion --

MR. CONVERTINO:  I will.

THE COURT:  -- and being available.

MR. CONVERTINO:  I will, judge.

THE COURT:  All right.

You didn't indicate what the other experts were going to testify about, just so we have a record on it.

MR. CONVERTINO:  Colonel Denning or Colonel Peterson will testify about the schematic drawings that relate to Incerlik Air Force Base.

THE COURT:  We discussed this briefly earlier, but

USA V KOUBRITI  ET AL. 01-80778

## Motion For Expert Opinions

that expert will then be able to testify from personal knowledge?

MR. CONVERTINO:  Yes, sir.

THE COURT:  From having reviewed the specific sites that are subject to the schematic -- the subject of the schematic drawing?

MR. CONVERTINO:  Yes, sir.

THE COURT:  Could be questioned, based on personal knowledge?

MR. CONVERTINO:  Yes, sir.

THE COURT:  Okay.

And what about Supervisory Special Agent George?

MR. CONVERTINO:  I anticipate Supervisory Special Agent George will testify about trade craft, terrorist trade craft.

THE COURT:  Sort of a background expert?

MR. CONVERTINO:  Yes, sir.

THE COURT:  All right.

I think Mr. Soles' point that you know what, to some extent, what the agents or what these experts are going to say, is well taken with respect to Mr. George.

You must know his position.  I assume he has a breath of knowledge already.  He's been debriefed by the Government as to his testimony.

It seems to me you ought to be able to provide his

USA V. KOUBRITI, ET AL. 01-80778

15

## Motion For Expert Opinions

testimony -- his report -- summary of his report before December 1st.

MR. CONVERTINO:  I will fully anticipate that.

THE COURT:  Can you do that by November 15th?

MR. CONVERTINO:  I don't believe I can.

Special Agent George is leaving for a two-week assignment, I believe this week -- next week.  He's leaving for two weeks.

And he has been asked, already, to begin to do that.  And I anticipate when he gets back, very shortly after --

THE COURT:  Has he published any papers or written any books?

MR. CONVERTINO:  No.

There is a matter that I would like to take up with the Court regarding Special Agent George at a later time.

THE COURT:  Okay.  Advise the Court, but it seems to me you know what he's going to say.

MR. CONVERTINO:  Yes, sir.

THE COURT:  And a summary of his testimony ought to be able to made available relatively soon --

MR. CONVERTINO:  I think we can.

THE COURT:  -- even if it's only in outline form.

MR. CONVERTINO:  I think we can do that soon, judge.

USA V KOUBRITI   ET AL 01-80778

## Motion to take Depositions

THE COURT: Try to have it done by November 15th.

MR. CONVERTINO: Okay. Thank you, judge.

THE COURT: All right. The third motion.

Mr. Thomas, you're going to argue the deposition motion?

MR. THOMAS: We're asking for depositions of two people, Your Honor.

Nabil Al-Marabh is, maybe not so much for discovery purposes, but there may be relevant information from Mr. Al-Marabh. His name has been used as the predicate for the search on Norman Street.

He at one point was linked to Al Qaeda. His case has been resolved in Buffalo that he's made an arrangement to be given credit for time served.

And he's being processed for --

THE COURT: Let me ask this.

MR. SOLES: -- deportation.

THE COURT: Mr. Thomas, what areas of inquiry would defense counsel expect to explore with Mr. Almarbh, if the Court grants the right to do a Rule 15 deposition?

MR. THOMAS: I believe that the inquiry would be material as to his presence in the Detroit area, his reason for being present in the Detroit area, how long he was present in the Detroit area, and where did he live.

His addresses that he'd given to the Secretary of

USA V KOUBRITI ET AL 01-80778

## Motion to take Depositions

State, on which dates he switched his address from the Norman Street address to the Wyoming Street address.  Whether or not he knows my client.

I'm certain the other lawyers would be curious as to whether or not he knew their client.

What the allegations were that were made against him originally.

THE COURT:  Just -- the allegations against him? He was never a defendant here.

MR. THOMAS:  He was never a defendant here in Detroit.

THE COURT:  Do you mean the allegations that he plead guilty to?

MR. THOMAS:  No.  The allegations that were made about him was that he was a person of interest to the Government, that he was wanted in Boston, that he had links to a subversive organization, he's had links to Al Qaeda.

And he was --

THE COURT:  And he was on the Terrorist Watch List.

MR. THOMAS:  Person of interest and on the Terrorist Watch List.

It's my understanding the Government has been satisfied that he was not a person who was linked to Al Qaeda, that his plea had nothing to do with terrorism and

USA V KOUBRITI, ET AL, 01-80778

## Motion to take Depositions

have acknowledged both in the press and I think on the record -- I've ordered a copy of the transcript, that he is not a terrorist or involved in the terrorism.

So, certainly the Government at that time was very interested in a lot of people, but were they warranted in that interest?

Were they warranted in his allegations that were made?  Those are things I'd like to get into with Mr. Almarbh.

The other person is Naser Ali Ahmed. Mr. Ali Ahmed is the brother of the deceased person who we believe was the author of at least some portions of the Day Planner.

THE COURT:  Look.

With respect to Mr. Akmed, if -- the Government has indicated that he will be available for trial.

MR. THOMAS:  Well, he says he may be available.

He also has told our investigators he's planning to leave for Yemen.  He's changed addresses four times in the last year.

THE COURT:  When did he tell your investigators this?

MR. THOMAS:  He told my investigator this in September -- I'm sorry, in October of last year.

And, again, reiterated to my investigator at some point in time this year.

USA V KOUBRITI ET AL 01-80778

## Motion to take Depositions

THE COURT:  Has your investigator or counsel been able to interview Mr. Akmed?

MR. THOMAS:  Yes.  They interviewed him as a result of that interview.

We disclosed to the Government that we believed that his initial report to the Government that his brother was illiterate, couldn't write, was inaccurate.

Have since --

THE COURT:  Do you believe he has personal knowledge, information which could, under Rule 16, be exculpatory to defendants?

MR. THOMAS:  We believe that he has personal knowledge as it relates the Day Planner, that he's seen the Day Planner.

We believe he is familiar with his brother's handwriting.

THE COURT:  What do you base that on, he's seen the Day Planner?

MR. THOMAS:  I base it on a 302 and my investigator's report.

So he clearly has relevant material, information relaying a very critical piece of evidence that's going to be coming in as critical to the defense.

Because it's our belief Mr. Ali Ahmed was a person who had a mentally unstable condition, that he had traveled

## Motion to take Depositions

extensively, and that he may very well have been in Turkey and that that would be exculpatory to the drawings that supposedly show a plan to blow up the airport.

THE COURT:  Mr. Convertino?

MR. CONVERTINO:  Yes, sir.

THE COURT:  What can you tell the Court about Mr. Akmed?

MR. CONVERTINO:  Mr. Akmed will be present at the time of trial.

THE COURT:  How can the Government assure that?

MR. CONVERTINO:  Well, Mr. Akmed, when he moves -- I believe among other reasons moves, because he feels he's being pestered.

But when he leaves his one address for another, he contacts the Special Agent and let's him know when he's going, where he'll be.

THE COURT:  If you know, what kind of roots does he have in the community?

MR. CONVERTINO:  I'm sorry?

THE COURT:  What kinds of roots does he have in the community?

MR. CONVERTINO:  He's employed.  He's been employed since -- I believe he's been employed since he was first made contact with.

And I think for -- I want to say seven years at the

## Motion to take Depositions

same place, judge.

He has, obviously, has family in Yemen.  He contacts his family in Yemen.

He told our investigator that he did have a desire to return to Yemen, briefly, to care for his mother who is sick and elderly.

The investigator told him that he should not leave the country and that he is a material witness or may be a material witness in this case.

THE COURT:  Does the Government plan to call him?

MR. CONVERTINO:  Yes.  I believe we will call him as a witness.

He's not leaving, judge.  But he's in no better or worse position then any other witness in the case.

THE COURT:  What's the Government's position on these two depositions?

MR. CONVERTINO:  Judge, regarding Mr. -- well, my position on Mr. Akmed is that there is no basis -- there is no extenuating circumstances that would require that he be deposed, since he will be at trial and he assures us of that. I'm confident of that.

He last talked to the investigator for the defendants, I believe Mr. Thomas said, in October. I think it was last October, if I'm not mistaken.

MR. THOMAS:  That was first talked --

USA V. KOUBRITI, ET AL. 01-80778

## Motion to take Depositions

THE COURT:  When was the last?

MR. THOMAS:  We believe that it was just before the last pretrial in this case.  And then he has since moved his address again.

MR. CONVERTINO:  He told us he has no interest in talking to the defense and he has told them that.

THE COURT:  Does he know he might be a witness?

MR. CONVERTINO:  He does, indeed.

THE COURT:  What about with respect to Mr. Almarbh?

MR. CONVERTINO:  Mr. Almarbh.

Judge, having heard Mr. Thomas say the reasons that he wants to depose Mr. Almarbh, I would oppose the deposition of Almarbh.

He was wanted in Boston, that's true, for assault with intent to commit great bodily harm on an incidental matter he had with a roommate.

Mr. Thomas says that he wants to determine whether the Government was warranted in its desire to talk to him.

It's not material to this case and certainly would have no extenuating circumstances that would go to a fact of materiality that would render any importance at all in this case.

We have agreed to stipulate that Mr. Almarbh was shown photographs of the three defendants in this case and,

USA V KOUBRITI, ET AL. 01-80778

## Motion to take Depositions

also, Mr. Hmimmsa was asked if he knew them. And Mr. Al-Marabh's response was no. We'll stipulate to that.

We'll stipulate -- and very probable can work out a stipulation on other matters if we're made aware of what they may be.

But, I believe that the deposition of Mr. Almarabh will be a fishing expedition, is not warranted, and is not material and extenuating for purposes of Rule 15 and deposition that's required and the categories required to be met.

THE COURT: Mr. Almarbh, it seems to me, is fairly central in this case, in that he -- it was his potential presence at the address on Norman Street that originally led to the search on Norman Street, which then originally led to the seizure of the evidence there. I believe there is evidence that at some point he lived at that address.

It seems to me that Mr. Almarbh may potentially be very relevant to the case and potentially to the defendant's defense of the case.

Now that doesn't necessarily mean that the defendants have a right to depose him.

But I am concerned that from what you've told me and, also, from what I've read in the media, he's going to be deported prior to trial of the case.

And it seems to me that the -- if that's the case,

## Motion to take Depositions

the defendants should be given an opportunity to perpetuate his testimony.

It may be exculpatory, as you've indicated, on at least one point.

And it's possible that the full texture and flair of Mr. Almarabh's testimony cannot be accomplished through a stipulation.

The simple fact, he doesn't recognize the pictures, does not give the defendants the full opportunity to present testimony.

I think what I am going to do is take under advisement this last motion with respect to the depositions of Mr. Almarbh and Mr. Akmed.

If I do grant defense counsel the opportunity to depose one or both of these individuals, it will be under fairly constricted circumstances, both as to the logistics and as to the scope of the examination.

And in any opinion I render, those circumstances will be spelled out, particularly with respect to Mr. Almarbh.

It strikes me that the logistics of any deposition of him will be very important.

And I'll communicate, further, with counsel, if I decide to permit the deposition of Mr. Almarbh -- I'll communicate further with counsel concerning the logistics of

## Motion to take Depositions

any deposition and the perpetuation of the testimony and how that will be accomplished.

MR. CONVERTINO:  Judge, if the Court believes that Mr. Almarabh is or may be a material witness in this case, then a material witness warrant can be issued.  He will not be deported.  He come here just like any other witness and testify before the jury.  Those issues can be hashed out then.

THE COURT:  The problem that we have -- I've thought about that.

The problem that we have is multifold.

First, I don't know if he's a material witness.  He may well be material to the defense, number one.

Number two, it strikes me that he may not be cooperative in testifying.  He may assert certain privileges or he may simply refuse to answer, in which case it will be too late at trial for -- from the defendant's prospective, to find that out.

I would prefer to find that out early rather than later, prior to the trial, so that if it's possible to address that, I can do that.

Thirdly, it seems to me that because of the centrality of Mr. Almarbh, at least to the commencement of the case, that the defendants should be entitled to explore their defense on this.

## Motion to take Depositions

Doesn't mean I've decided to permit the deposition, but these are considerations that I have to think about.

It also strike me that he may have some information about the documents in the Day Timer that was seized at the Norman Street site.  He may not, but he may.

My understanding is he has not been questioned on those events.

So all of these questions, it seems to me, mitigate in favor of finding out more about Mr. Almarbh sooner rather than later.  But I've not yet made a determination.

Rule 15 contemplates the permission -- the existence of special circumstances, unusual circumstances, exceptional circumstances, before a prospective witness is made available for deposition and his testimony is preserved.

And it's also fairly clear that it cannot be solely for the purpose of discovery.

The problem in this case is, given Mr. Almarabh's sort of role in the -- his background here, it's hard to know whether his testimony will be material until we actually see what he has to say.

Do you know, perhaps, whether he will testify; whether it's in deposition or trial?

Have you been in contact with his lawyer, for example?

MR. CONVERTINO:  No.

USA V KOUBBITI ET AL. 01-80778

## Motion to take Depositions

THE COURT:  My understanding is he has a lawyer, right?

MR. CONVERTINO:  I'm sure he has a lawyer in Buffalo.

MR. THOMAS:  It's the FDO in Buffalo.

THE COURT:  He's also had a lawyer from Detroit.

MR. THOMAS:  He had a lawyer who was in the media more then he was in court.

THE COURT:  I see, a spokesman, not a lawyer.

All right.

MR. CONVERTINO:  Thank you, judge.

THE COURT:  All right.

With respect to the first two motions, the motion for the production of the INS and Customs files of Mr. Ali Mohammad Ahmed, that motion will be granted, has also been substantially complied with.

The Government has indicated the Custom's file will be produced as soon as they are available.  If they are not available, the Government will file a statement indicating they are not available.

If they are available, that the Government does not wish to produce parts, all or parts of the files, the Government will produce those files to the Court, and in accordance with discovery protocol that has been established by the Court for evidence upon which the Government claims

## Motion to take Depositions

privilege.

With respect to the discovery of expert opinions, the Government will make those summary of the experts opinions available to the defendants no later then December 1st.

With respect to Special Agent --

MR. CONVERTINO: George.

THE COURT: -- George, Court anticipates, absent some good faith reason, that the Government will make that report available by November 15th.

All right. Anything further? I should note -- I'm sorry.

Mr. Helfrick?

MR. HELFRICK: Your Honor, we were hoping, maybe you could help in getting the defendants out of the Wayne County Jail and, perhaps, moved to Milan?

THE COURT: Could you do me a favor? Put that in writing. I will discuss it with the marshals, okay?

MR. HELFRICK: Yes, Your Honor.

THE COURT: I've been advised by one of the attorneys a motion was filed last week.

Mr. Ernst?

MR. ERNST: Yes, Your Honor.

THE COURT: Did you file a motion last week?

MR. ERNST: Friday, I believe. I'm not 100

percent sure.

THE COURT: Have you discussed this with your client?

MR. ERNST: Yes, Your Honor.

THE COURT: I haven't seen the motion.

Do you have a copy I could look at it now?

MR. ERNST: It wasn't set for hearing.

THE COURT: Given the nature of the motion, I think we should address that as soon as possible.

MR. ERNST: I agree.

THE COURT: I asked my staff to check. We didn't get a courtesy copy.

MR. ERNST: That was the first I learned about it, this morning.

THE COURT: Would you please fax over, as soon as you can, a courtesy copy of the motion. We'll set that for hearing as soon as possible.

MR. ERNST: Thank you.

THE COURT: Thank you. Anything further?

MR. CONVERTINO: Judge, just a housekeeping matter, so-to-speak.

We were somewhat confused in our office about whether the defense wants us to contact the interpreters to make sure that the interpreters are here. Obviously, we don't need to do that. I just wanted to make sure.

USA V KOUBRITI ET AL 01-80778

MR. HELFRICK: I'm not --

MR. THOMAS: It's usually done with Court Services.

THE COURT: You supposedly trigger it by request, then we take care of it.

MR. CONVERTINO: Our office was triggering that request, but unless we don't have to do that --

MR. HELFRICK: I don't believe that's necessary for them to do that.

The only other thing I guess, too, was the Court was reviewing materials.

I'm wondering if we have a time line?

THE COURT: Thank you, Mr. Helfrick, for reminding me. I intended to get to that.

I've now completed my *in camera* review. It was delayed, due to some logistical problems.

I've completed that. I hope to have an opinion and an order out within the next week or so.

MR. HELFRICK: Thank you.

MR. CONVERTINO: Judge, there will be some more documents. I believe we'll get those to the Court today that I received on Friday.

THE COURT: You're going to submit pursuant to the discovery protocol?

MR. CONVERTINO: Yes, sir.

USA V. KOUBRITI, ET AL. 01-80778

THE COURT:  Okay.

MR. CONVERTINO:  In addition --

THE COURT:  How many are we talking about?

MR. CONVERTINO:  Four pages.

THE COURT:  Four pages.

MR. CONVERTINO:  Three, four pages.  One report.

THE COURT:  You'll make yourself available and Agent Thomas, for continuation of this review?

MR. CONVERTINO:  Yes, sir.  Today, judge?  Do you want that done today?

THE COURT:  Let me look at the documents first.  I don't think they'll be today, but maybe tomorrow.

MR. CONVERTINO:  In addition, judge, we've already requested reciprocal discovery.  I'd like to do that today.

Mr. Thomas indicates they're some reports that their investigator has drawn up pursuant to his conversation with Mr. Naser Ahmed.

We would ask that those be turned over and other additional discovery matters.  If they would turn over under Rule 16.

THE COURT:  Mr. Thomas?

MR. THOMAS:  Did I say reports?

THE COURT:  You said you had interviews.

MR. THOMAS:  Interviews.

THE COURT:  If they're any witness statements.

USA V. KOUBRITI   ET AL. 01-80778

MR. THOMAS:  If there's a Rule 16 Report that's available.

THE COURT:  Or witness statements.  If you have any witness statements.

MR. THOMAS:  I will.

THE COURT:  All right.

MR. CONVERTINO:  Thank you, Judge.

THE COURT:  Thank you.

(This hearing then concluded at 11:13 a.m.)

USA V KOUBRITI  ET AL 01-80778

CERTIFICATE OF COURT REPORTER

I certify that the foregoing is a correct transcript from reported proceedings in the above-entitled matter.

CAROL S. SAPALA, CSR, RPR, CM

Date