UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                    Government.

    v.

AHMED HANNAN,
KARIM KOUBRITI,
YOUSSEF HMIMSSA,
ABDEL ILAH EL MARDOUDI,
FAROUK ALI-HAIMOUD,

                    Defendants.

_____/

MOTION FOR BILL OF PARTICULARS
MOTION TO COMPEL COMPLIANCE WITH RULE 16
REGARDING EXPERT WITNESSES
MOTION RE:  EXTRA SECURITY MEASURES


BEFORE THE HONORABLE **GERALD E. ROSEN**
United States District Judge
860 US Courthouse & Federal Building
231 Lafayette Boulevard West
Detroit, Michigan
**Thursday, February 13, 2003**


APPEARANCES:


    RICHARD CONVERTINO
    KEITH CORBETT
    Assistant United States Attorneys
    211 West Fort Street
    Detroit, MI 48226
            On behalf of the Government.
            -    -    -


Stenographically reported by:  Carol S. Sapala, RMR-FCRR


USA V KOUBRITI, ET AL, 01-80778

APPEARANCES:   (continuing)


        **LEROY SOLES**
        Federal Defender Office
        645 Griswold Street, Ste. 2255
        Detroit, MI 48226
                On behalf of Defendant Koubriti.

        **JAMES C. THOMAS**
        2632 Buhl Building
        Detroit, Michigan 48226
                On behalf of Mr. Hannan.

        **ROBERT MORGAN**
        645 Griswold, Ste. 4100
        Detroit, Michigan 48226
                On behalf of Defendant Ali-Haimoud.

        **WILLIAM S. SWOR**
        645 Griswold, Ste. 3060
        St. Clair Shores, MI 48226
                On behalf of Defendant El Mardoudi.



THE INTERPRETER:   DAVID HABBOO


USA V KOUBRITI, ET AL, 01-80778

# C O N T E N T S

IDENTIFICATION                                           PAGE


**Motion For Bill of Particulars**

Argument by Mr. Soles                                        6

Response by Mr. Convertino                                   7

Argument by Mr. Soles                                       26

Argument by Mr. Swor                                        28

The Court's Ruling                                          29


**Motion To Compel Compliance with Rule 16**

Argument by Mr. Corbett                                     29

The Court's Ruling                                          36


**Motion Re:   Extra Security Measures**

The Court                                                   36


Certification of Court Reporter                             49

USA V. KOUBBITT  ET AL. 01-80778

# E X H I B I T S

**IDENTIFICATION**          **MARKED**      **RECEIVED**

NONE            MARKED

## Motion For Bill of Particulars

Detroit, Michigan

Thursday, February 13, 2003

2:13 p.m.

THE LAW CLERK: Calling case number 01-80778, United States of America versus Karim Koubriti, Ahmed Hannan, Abdel Mardoudi and Farouk Ali-Haimoud.

THE COURT: Afternoon, gentlemen.

If I could have the appearances of counsel, please, starting with the Government.

MR. CONVERTINO: Rick Convertino, on behalf of the United States, sir.

MR. CORBETT: Keith Corbett, on behalf of the United States.

MR. SOLES: Leroy Soles, Federal Defender Office, on behalf of Mr. Koubriti.

MR. THOMAS: James Thomas, on behalf of Hannan, Your Honor.

MR. SWOR: William Swor, on behalf of Abdel El Mardoudi, Your Honor.

MR. GEROMETTA: James Gerometta, Federal Defender Office.

MR. MORGAN: Robert Morgan, on behalf of Farouk Ali-Haimoud.

THE COURT: All right. We have two motions that are pending before the Court.

USA V KOUBRITI ET AL 01-80778

## Motion For Bill of Particulars

And a couple of other matters that I want to discuss with counsel as well.

The first motion that the Court will hear is the defendant's Motion For A Bill Of Particulars, and then defendant Ali-Haimoud's Motion To Compel Compliance With Rule 16 Regarding Expert Witnesses.

Before we begin, I want to swear in our interpreters. I think I see some new faces here. I want to welcome you to our court.

And you're the only interpreter here today?

THE INTERPRETER: I'm the only one. Yes, Your Honor.

THE COURT: Would you raise your right hand, please.

(Whereupon David Habboo was then sworn)

THE COURT: Very good has.

The court reporter gotten your name? Very good.

Thank you.

All right. Mr. Soles, if you would please proceed, please, on the Motion For Bill Of Particulars.

MR. SOLES: Your Honor, in this case -- well, we're now on our third Superseding Indictment.

We've received, maybe, 800 maybe 1,000 pages of discovery.

We've received a videotape of a trip through the

USA V KOUBRITI  ET AL 01-80778

## Motion For Bill of Particulars

United States.

We've received tapes of an Islamic speaker. And the Motion For The Bill Of Particulars that was filed, still begs all the questions that are asked here.

We don't know anything about this case. We don't know what the Government means in the Indictment.

The Indictment is full of language that is just general, very general language. Language that gives us no clue as to -- which could mean that -- any, any number of things. An infinite number of things.

And we have not been given and we're not -- we've asked for Grand Jury material. We've asked for 302's of Mr. Hmimssa, who we expect to -- our guess is, that's the person who's going to make their case for terrorism, we haven't been given that.

We're at a loss as to what these things mean.

Now I could go over each and every request but --

**THE COURT:** Rather than doing that, Mr. Soles, why don't you simply focus upon what specific information you believe is required under the law that is not contained in the Indictment or not within the discovery provided you, that goes to the elements of the case that the Government would be required to prove at trial, that you claim are missing.

**MR. SOLES:** A Bill Of Particulars doesn't just go

## Motion For Bill of Particulars

to the elements of the case, the Bill Of Particulars goes to allowing the defense an opportunity to prepare for trial.

It doesn't just -- it goes to the elements, it goes to preparation for trial, and it goes to being able to plead former jeopardy. And there are things that are missing here.

We cannot prepare in this case.

THE COURT: Tell me what.

MR. SOLES: First of all, in their preamble where they allege all of the various groups that have been involved in terroristic activity throughout the world, we don't know what group they're saying our people belong to, if any of them.

I don't know why i'ts in there, but I suspect they allege all the different terrorist groups. They're saying, I suspect, but I don't know, that our clients belong to one of these groups.

And they mention about --

THE COURT: Do you think it is, well --

MR. SOLES: About ten of them. I don't know who. Here's the problem.

THE COURT: They never alleged that your clients belonged to any particular group.

What they alleged is that your clients have been providing support to a worldwide terrorist organization of which these groups are a part.

USA V KOURRITT ET AL 01-80778

## Motion For Bill of Particulars

MR. SOLES:   And who.

And we don't know who our defendants have been giving material support to, which of these many groups.

Because in the paper every day, and in this Indictment, they mention seven to ten groups.

And we don't know who they're supposed to be giving the material support to.  We don't know what the material support is that they're giving to these unnamed groups or unknown groups.

We don't know.  So how can we prepare for trial if we don't know who they're giving it to and what they're giving to them, what these material support and resources are.

They say that they gave this unknown material support to these unknown groups to destroy specific property and we don't know what property they're talking about.  So we can't prepare for that.

Now we know that they're supposed to be an Air Force Base in Incerlik, Turkey, we know there's supposed to be some unnamed hospital in Amman, Jordan.

And then we've been given a travel log of this videotape where these people have videotaped different places in the United States.

And we don't know other than, I guess, and we're guessing, Turkey, because they mention Turkey and they

## Motion For Bill of Particulars

mention the hospital.

But they say groups within places within the United States. And we don't know what the heck they're talking about. We don't know how to prepare for that.

We don't know -- and here's the problem.

How do we get ready for that? How, how even in the discovery -- the discovery doesn't say anything.

The discovery says they've been places. The discovery that videotape it doesn't say they've ever been to Disneyworld or Nevada -- Las Vegas, Nevada.

Are these the places? Are we supposed to go -- are we supposed to -- how can we concentrate our efforts to prepare and to investigate this case?

We don't know what these places were that they were trying to commit, whatever the violent attacks were.

What are the violent attacks? At different times -- see the problem?

**THE COURT:** Are you arguing that the law requires the Indictment to spell this out with particularity?

Because I've not seen any law that requires particularity, so long as the means of the conspiracy are sufficiently alleged.

So long as the methods of the conspiracy are sufficiently alleged, so long as the overt acts are sufficiently alleged, puts you on notice.

USA V. KOUBRITI, ET AL. 01-80778

## Motion For Bill of Particulars

**MR. SOLES:**  One of the problems, Your Honor, the means aren't sufficiently alleged.  We don't know what they're talking about.  We don't know what the means are.  So to answer that question, we don't even have that.

Now what law Your Honor asks?  And that's -- I think that that's noteworthy.  There's a case *United States versus bin Laden.*  It's an F. Supp. case.  The Government doesn't even deal with it.

The only case we can find where they've dealt with this kind of issue, the same kind of case.

Most Bill Of Particular cases, cases dealing with Bill Of Particular motions, don't help you understand another case, because cases are so different factually.

But the case of *United States versus bin Laden* is like this case.

**THE COURT:**  Do you have, do you have a cite to that, Mr. Soles?

**MR. SOLES:**  It's in the motion, Your Honor.  And here, in fact I've kind of marked this up, if Your Honor doesn't mind having my copy of it.

**THE COURT:**  I have a copy of your motion.

**MR. SOLES:**  That's -- that is a terrorist case from New York with Mr. Bin Laden, where the Indictment in many ways --

**THE COURT:**  This was Judge Sand's case, right?  Go

USA V KOUBRITI ET AL 01-80778

## Motion For Bill of Particulars

ahead.

**MR. SOLES:**  Same facts alleging terrorism, alleging an international terrorist group comprised of many, many different organizations.

Alleging attacks on U.S. interests throughout the world, alleging unknown and unnamed co-conspirators throughout the whole country.

It alleges and uses words that -- general words, words the defendants were involved in a business or in travel to further terrorism.

Nonspecific allegations, allegations that gave rise to a number of possibilities involved use of coded language, just like this, just like this Indictment.  Coded language.

One of the complaints in this case is that one of the co-conspirators used coded language to communicate with unknown brothers in Europe.  And nobody knows who the unknown brothers in Europe are.

Nobody knows what the coded language was.  And in that case they said, look.  This language is just too general, too vague.  And it does not allow the defendants an opportunity to prepare for trial.

It does not guard against surprise at trial.  It does not provide for an opportunity to plead former jeopardy. They talked about all of the unindicted co-conspirators.

All of the -- in that case, the *bin Laden* case,

## Motion For Bill of Particulars

they talked about all of these unknown people and the Court said, look.  Who are these people?

How can the defense later plead jeopardy when these other people, these unknown people, are arrested on some other charge?  The same thing here.

Who are the unknown brothers in Europe?  The Government in this case has talked about people running around in Europe with no names, running around the United States, running around in the Middle East, and we don't know who.  We don't know what.  They talk in general terms about providing material support and they don't say what it is.

They talk in terms of causing damage to buildings and we don't know what buildings they're talking about.

They talk about coded language and we don't know what they're talking about.

What's interesting in the *bin Laden* case is in *bin Laden* when the coded language -- it's coded in the Indictment, they talk about coded language, sometimes with a date, sometimes without a date.

And when it's with a date, the Court says we're going to deny your motion for Bill Of Particulars, because they should be able to look at that date and figure out what you're talking about, defendants.

But when it just said coded language without a date, without a place, without a time, the Court asked --

## Motion For Bill of Particulars

THE COURT:  You surely -- you surely are not arguing that the Government is required -- your allegations involving the use of coded language are made, that the Government is required to document by date, each and every conversation.

MR. SOLES:  How many conversations are there that Your Honor's talking about?  Because I don't know.

No.  I'm saying that the law requires that the Government provide enough information to allow the defendants prepare for trial.

And this Indictment and the Second, the Third Superseding Indictment, tells us nothing.

THE COURT:  What else?

MR. SOLES:  We can't --

THE COURT:  What else, Mr. Soles?

MR. SOLES:  We can't prepare for trial.

THE COURT:  What else, Mr. Soles?

You've mentioned that there's -- Mr. Soles, you've mentioned that there is a lack of specificity as to material support as to the property that they are alleged to have been attempting to destroy, that there's a lack of specificity as to the conversations regarding coded language.

What else?

MR. SOLES:  Does Your Honor want me to go -- you have a copy of the motion, don't you?

USA V KOUBRITI ET AL 01-80778

## Motion For Bill of Particulars

THE COURT:  I read your brief.  And, frankly, it was unhelpful as the Government's response, if you want to know the truth.  Because you're all -- you're both dealing in generalities.

What you've simply did in your motion and in your brief is, you went through the Indictment and you asked who, what, when, where as to each allegation.

All the Government did was give me a lot of general boiler plate language about the law on Bill of Particulars, which was equally unhelpful.

MR. SOLES:  Your Honor --

THE COURT:  You want to know.

MR. SOLES:  I want to know what material support.  Yes, I do want to know what, who, when.

THE COURT:  They're not required under the law to give you chapter and versus of each particular transaction, each conversation.

What they are required to do, in my view, is to tell you when they refer to providing material support, what is the nature of the material support.

MR. SOLES:  Thank you.  They don't tell us what it is.  Thank you.

THE COURT:  Let me finish.

MR. SOLES:  Okay.

THE COURT:  What material support is alleged that

USA V. KOUBRITI, ET AL. 01-80778

## Motion For Bill of Particulars

they are to be providing?

When they talk about property, I don't think that they have to name specific sites, but they do have to name the means by which this was going to be carried out and, specific types of targets, if you will, that were intended. Landmarks, commercial sites, whatever.

**MR. SOLES:**  We'd like to know that.

**THE COURT:**  These sorts of things.

In other words, I'm going to have a conversation with who ever is representing the Government, either Mr. Corbett or Mr. Convertino.

It's time to get down to the more clear -- a more clear statement of the issues that we're going to be trying.

It's time to get to --

**MR. SOLES:**  Okay.

**THE COURT:**  -- the exact issue that we're going to be trying.

But it's not very helpful for the defense lawyers, either, to simply go through the Indictment, list each charge and then say we want to know who, what, where, when, why, how.

You know as well as I do, Mr. Soles, you've been doing this stuff for a long time.  You're not entitled to that in a Bill Of Particulars.

You are entitled only to know sufficient

USA V KOUBRITI  ET AL 01-80778

## Motion For Bill of Particulars

information, such that you can prepare your defense and respond to specific allegations.

I think, perhaps, the best way for -- to proceed at this point, is to hear from the Government and then I'll decide what information, if any, has to be supplied prior to trial.  Okay?

Who's going to represent the Government?

**MR. CONVERTINO:**  Thank you.

**THE COURT:**  Mr. Convertino?

**MR. CONVERTINO:**  Yes, sir.

**THE COURT:**  Let's get more specific.

When the defense raises issues about information, I was hoping that this information would be fleshed out through the course of discovery that has been provided.

Do you contend that it is?  Let's make a record of that as to what the Government's proofs will be on these specific points.

However, if it has not been provided, you're going to have to provide it.

**MR. CONVERTINO:**  Well, judge, the issue, it seems to me, is whether or not the Indictment is legally sufficient.  And the response that we've provided was based on the law in the Sixth Circuit.

**THE COURT:**  That's not the issue for me, Mr. Convertino.  That is not the issue for me.

## Motion For Bill of Particulars

There is a distinction between legal sufficiency in terms of the elements and what is charged.

I have no doubt that the Indictment, as written, makes out the broad elements of the claims sufficient to satisfy the legal standards for whether or not the Indictment is sufficient. But that's not what the defendants are asking.

The defendants want to know what this material -- for example, what is the material support that they are alleged to have been providing.

MR. CONVERTINO: It's in the Indictment.

THE COURT: Tell me.

MR. CONVERTINO: The object of the conspiracy was, among other things, to cause economic harm to the United States, United States businesses, provide personnel indoctrination, recruitment, training, safe houses, mail drops, intelligence target data collection, weapons, false documentation, identification and assistance.

THE COURT: This is just a laundry list.

MR. CONVERTINO: But, judge, that's what we're going to allege -- that's what we're going to prove.

THE COURT: This is just a laundry list. I want more specificity, Mr. Convertino. I want more specificity.

If you have specific property targets, I want you to tell them what those specific property targets are.

USA V KOUBBITI ET AL 01-80778

## Motion For Bill of Particulars

MR. CONVERTINO: There's no doubt what those are.

THE COURT: Let's not play hide the ball on this. We're going to have a trial here in a little more than a month.

MR. CONVERTINO: Well, judge, then I guess I'm confused at how anybody, at this point in time, could even remotely be considering or wondering what the specific property targets were in this case.

THE COURT: What are they?

MR. CONVERTINO: Incerlik Air Force Base and the Queen Alia Military Hospital in Amman, Jordan.

THE COURT: Are these the targets that are going to be included in terms of property targets and targets of terrorist activities that these defendants are alleged to be involved with?

MR. CONVERTINO: We believe there will be, yes.

THE COURT: What are they?

MR. CONVERTINO: That is based on the surveillance tape and testimonial evidence.

THE COURT: The Disneyland tape?

MR. CONVERTINO: Yes.

THE COURT: That's another target, right?

MR. CONVERTINO: Yes.

MR. SOLES: Excuse me. The Disneyland tape has five or six different places.

## Motion For Bill of Particulars

It's a travel log.  It's Disneyland, it's Las Vegas.

THE COURT:  Then you're on notice, Mr. Soles.

MR. SOLES:  No, Your Honor.

THE COURT:  Mr. Soles.

MR. SOLES:  He should tell us.

THE COURT:  Mr. Soles, sit down.

If they're five or six places on the tape, those are the five or six places.

You wanted specificity, you got specificity.

MR. SOLES:  Is that what he's saying or what you're saying right now, because that's not what he's saying.  He's saying nothing.

THE COURT:  He's telling me that they've given you tapes that reflect the targets.  Those are the sites you wanted with specificity.  He's now telling you those are the sites.

What else?

MR. CONVERTINO:  That's it, judge.

THE COURT:  So it is the Incerlik Air Force Base.

MR. CONVERTINO:  Yes.

THE COURT:  Queen Alia Hospital in Amman, Jordan.

MR. CONVERTINO:  Yes.

THE COURT:  The sites that are on the tapes that have been provided, correct?

USA V KOURRITT ET AL 01-80778

21

## Motion For Bill of Particulars

MR. CONVERTINO:  Yes, sir.

THE COURT:  Any other specific sites?

MR. CONVERTINO:  No.

THE COURT:  All right.

MR. CONVERTINO:  No specific sites, no.

THE COURT:  What about the allegation of material support?

What types of material support will the Government be proving at trial that these defendants are alleged to have provided or conspired to provide to these organizations?

MR. CONVERTINO:  Weapons, money, personnel, assistance with the housing or bringing into the country people from outside of the country, and false documentation, provided the false documentation to further travel for these organizations and groups.

THE COURT:  What is the means by which they are alleged to have provided this support?  How were they doing it?

MR. CONVERTINO:  They were desirous and attempted to acquire false documentation knowingly, in order to bring people into this country, in order to travel outside of the country, in order to train anonymously at various sites under the false documentation.

They also sent money or desired to send money to various organizations.

USA V KOUBBITI  ET AL 01-80778

## Motion For Bill of Particulars

THE COURT:  Do you have -- are you going to be presenting specifics proof as to monetary support to specific organizations?

MR. CONVERTINO:  Yes.  There's not -- I'm sorry.

THE COURT:  Go ahead.  Go ahead.

MR. CONVERTINO:  You said specific proofs.  Not by way of wire transfer from Point A to Point B.

THE COURT:  Are you going to be providing testimony on it?

MR. CONVERTINO:  Yes.

THE COURT:  What groups?

MR. CONVERTINO:  The Al-Islamiyya and the Armed Islamic Group, also known as GIA.

THE COURT:  These are the groups that are mentioned, two of the groups, anyway, that are mentioned in the Indictment.

MR. CONVERTINO:  Yes, Judge.

THE COURT:  What overt acts are the Government -- is the Government going to be proving at trial?

MR. CONVERTINO:  All of the overt acts we listed, certainly, in the Indictment, which are specific.  And I think we have at least 20, if I'm not this taken.

THE COURT:  Are you going be presenting proofs on -- for example, in looking at the Indictment --

MR. CONVERTINO:  Yes, sir.

USA V KOUBRITI  ET AL. 01-80778

## Motion For Bill of Particulars

THE COURT:  -- are you going to be presenting proofs that, taking the first specific allegation that I find in the overt act section, that Mr. Koubriti and Mr. Hannan met with an individual at the Arabian Village Cafe in Dearborn?

MR. CONVERTINO:  Yes, sir.

THE COURT:  Approximately, June 1, of 2001?

MR. CONVERTINO:  Yes, Judge.

THE COURT:  Are you going to be presenting proofs that Mr. Koubriti, Mr. Hannan, and Mr. Ali-Haimoud, met with the individual at the Riverside apartment on June 3rd and that they introduced a person, an individual, to Mr. El Mardoudi?

MR. CONVERTINO:  Yes.

THE COURT:  Are you going to identify this individual?

MR. CONVERTINO:  Yes.  Youssef Hmimssa.

THE COURT:  Mr. Hmimssa.

I can go through all of these overt acts.  The defendants can read them as well.

I guess my question to you, in general, so the defendants can be prepared to defend themselves at trial is, is this information listed in the overt acts, going to be presented through testimony, through documents and -- not exclusive, obviously, of each other, but is it going to be

USA V KOUBRITI  ET AL 01-80778

## Motion For Bill of Particulars

presented through testimony, documents?

What is the nature of the proofs going to be on these overt acts?

**MR. CONVERTINO:**  Testimony and documents.  Yes, sir.

**THE COURT:**  I assume Mr. Hmimssa is going to be one of the witnesses with respect to these overt acts.

**MR. CONVERTINO:**  Yes, Judge.

**THE COURT:**  What other witnesses is the Government prepared at this time to indicate will be testifying to the overt acts alleged?

You don't have to give specific names, if there are security reasons why you can't.  But just describe generally.

**MR. CONVERTINO:**  Well, judge, for instance, overt act 31:

On or about November 4, 2002, defendant Abdel El Mardoudi, with various aliases included, traveled to Greensboro, North Carolina and was in possession of the following items, that being two, four, six, eight, ten, twelve, fourteen --

**THE COURT:**  About 20 items.

Including a series of false identifications, $83,000 in cash, $4600 in money orders will be --

USA V KOUBRITI ET AL 01-80778

## Motion For Bill of Particulars

THE COURT: You're going to be introducing those items?

MR. CONVERTINO: Yes, sir.

THE COURT: And somehow tying those items into the general conspiracy charge of providing material support to terrorist related activities?

MR. CONVERTINO: Yes, Judge.

THE COURT: And through what testimony will you be tying those documents, which I know the Government alleges are false identification.

Through what testimony will you be using to tie those documents, either testimony or other evidence, to tie those documents into the conspiracy allegations?

MR. CONVERTINO: There will be, I anticipate, more than one person who will testify along those lines that will be able to tie that on.

THE COURT: Who are they?

MR. CONVERTINO: Youssef Hmimssa is one.

The defendant, El Mardoudi's statement at the time he was arrested regarding the documents and his purpose in travel is another, which would come in through agents who interviewed him pursuant to his consensual interview after he was Mirandized.

And there will be a series of people who will testify regarding the documents themselves.

## Motion For Bill of Particulars

THE COURT:  Okay.  Anything more on the means that the Government is prepared to present evidence on, by which the conspiracy was carried out?

MR. CONVERTINO:  No, judge.  I think its -- you know, I think it's straightforward.  I think it's inclusive, and certainly specific enough.

THE COURT:  Mr. Soles --

MR. CONVERTINO:  Thank you, Judge.

THE COURT:  -- Mr. Convertino says everything they're going to prove you've got already.

MR. SOLES:  He said nothing, Your Honor.  He said nothing and the discovery said nothing.

All we did right here is an exercise.  You just led him through the Indictment.  He said yes, yes, yes.

He said nothing, he said nothing.  He gave us nothing.  And Your Honor should order that a Bill Of Particulars, based on what we requested in that motion.

Your Honor should read that case, *bin Laden*.

THE COURT:  I'll read the case, Mr. Soles.

But what Mr. Convertino has told you, you asked specifically what property.

MR. SOLES:  He said nothing.

THE COURT:  He gave you a list of five or six places.

MR. SOLES:  He gave us -- Your Honor, have you

USA V KOUBRITI ET AL 01-80778

## Motion For Bill of Particulars

seen that travel log?  It's just some students walking around with a handheld camera, focusing on Mickey Mouse ears and on women in tight skirts.  That's all it is.

THE COURT:  That will be for the jury to decide, won't it.

MR. SOLES:  I'm telling you -- have you watched it?  It shows us nothing.

THE COURT:  I don't have to watch it.

MR. SOLES:  It shows us nothing.  It's a travel log.  It shows us nothing.

And there's nothing in the discovery that says they're going to Las Vegas or to California or to Disneyworld.  It says nothing.

It's a case that they bring out in a million other of these terrorist cases.  It shows nothing.

THE COURT:  You're not impressing me by simply staring at me.

MR. SOLES:  I've can't even see you.  I've got my glasses off.

THE COURT:  Perhaps you should put your glasses on.  You'll hear me better.

By standing up there and telling me that he's saying nothing, when he has clearly stood up and told me five or six specific places, you're not impressing me, Mr. Soles.

MR. SOLES:  He didn't tell you.  What did he tell

## Motion For Bill of Particulars

you?

All you did was walk him through the Indictment that we complain about.

THE COURT:  We're not making much progress.

MR. SOLES:  No, we're not.

THE COURT:  We're not making much progress.

Any other defense counsel wish --

MR. SWOR:  Your Honor?  The Indictment in several places refers to "an individual".

And I guess one of the things, you know, that I would be concerned is, does "an individual" refer to the same person all the time or are we talking about multiple individuals?

Frequently we see in indictments, you know, C-1, C-2, C-3.  Here, we see just simply "an individual".

THE COURT:  I don't think the law requires, Mr. Swor, for the Government to identify that individual in its Indictment.

MR. SWOR:  I'm not asking -- I'm not asking.

THE COURT:  You want to know how many people --

MR. SWOR:  If there's more than one.

THE COURT:  -- allegedly involved.

MR. SWOR:  Yeah.

THE COURT:  Mr. Convertino, can you respond to that?

## Motion to Compel

MR. CONVERTINO:   There's more than one person involved, judge.

The person that -- the main person who's alleged to be as the individual is Mr. Youssef Hmimssa.

MR. SWOR:   Thank you.

THE COURT:   All right.   I think I've heard enough argument on the Motion For Bill Of Particulars.   I'll have an opinion out on this.

I do want to hear from the Government, first, on the Motion To Compel the more specific complaints with Rule 16(a)(1)(G).

Mr. Corbett, you're going to handle that?

MR. CORBETT:   Yes, I am, Your Honor.

THE COURT:   Would you be so kind as to provide me with a copy of the summary that you've provided the defendants, so I may have a look at it, since neither party provided me with a copy?

MR. MORGAN:   I thought there was an order that it was filed and sealed.

THE COURT:   I don't think I saw it.

MR. CORBETT:   Yeah, there is.   It was back in December, Your Honor.   But here's a copy.

THE COURT:   I didn't.   I don't have a copy.

MR. CORBETT:   I won't make -- because, as was indicated, it's under seal, I won't make any specific

USA V. KOUBRITI, ET AL. 01-80778

## Motion to Compel

references to it.  I'll be generic in my description of it.

It seems to me that the motion filed by counsel really addressed two issues.

One was a *Daubert* issue and the question as to whether or not the subject matter of the testimony was appropriate.  And whether or not an expert witness could be qualified to render an opinion about the subject matter that the Government indicates in its written response the witnesses will be prepared to testify.

And the second question is, it seems to me, is Mr. Morgan's question, as to whether or not the document provided by the Government is specific enough in advising him as to the identity and substance of the testimony.

I understood from our previous in-chambers meeting, that the Court was going to treat the *Daubert* motion as a motion *in limine*.

And I think that the only way that the Court can adequately handle the *Daubert* motion, is to hear from the expert, to hear the experts proffering testimony outside the present of the jury, whether that be at a pretrial hearing or before the testimony is actually proffered to the jury.

And then on its -- the after hearing the testimony, the Court can make a determination as to whether or not the proffered testimony meets the applicable standards for reliability.

## Motion to Compel

The Government would contend, however, that as to the preliminary question pursuant to Rule 16 as to the identity and the basis of the testimony that would be proferred by the witnesses, we have, in fact, complied with that by virtue of the document filed back in December.

To use -- I think it's the *Byrd* case, the description in this case, it is not in many instances a witness testifying as a medical witness would be or an engineering expert, where you can rely on degrees and publications, *et cetera*.

**THE COURT:** Frankly, I view the experts in this case that the Government is going to be presenting as in the nature of the experts that are presented in the typical, if there is such a thing, as the typical mob racketeering case; to provide background information about the kinds of activities that are conducted in the mob, the nature of communications by mob members to other mob members, those sorts of things.

Is that correct?

**MR. CORBETT:** That is correct, Your Honor. And that would -- as to some of the experts.

Others are going to be in a position to testify from an academic prospective, perhaps, about tenants of Islam, certain sub sub groups of Islam.

But the testimony about the nature and structure of

USA V KOUBRITI ET AL 01-80778

## Motion to Compel

clandestine organizations, the ways in which terrorist groups and cells may function, the procedures they utilize to instruct their members as to how to deal with questions like interrogations and arrests, *et cetera*, I would say is very analogous, as the Government has suggested in its written response, to the organized crime situation, where a law enforcement personnel is someone else is called upon, based upon their experience and expertise, to render an opinion as to how these particular groups function on a day-to-day basis.

**THE COURT:**  Without getting into detail, however.

**MR. CORBETT:**  Yes.

**THE COURT:**  Beyond these more general experts who will describe these things in a more -- as more as background and context for the jury to understand the theory of the Government's case.

Beyond that, there will be at least one expert who, I believe, is going to testify.

**MR. CORBETT:**  About trade craft or what we would call in general terms --

**THE COURT:**  Specific trade craft.

But, also, specifically tie in certain items that have been made available to the defendants as being what the Government purports them to be?

**MR. CORBETT:**  That's right, Your Honor.

USA V KOUBRITI ET AL 01-80778

## Motion to Compel

I believe he would testify that, in his opinion, these items evidence the defendants' involvement in the kind of group, the Government has contended in the form of the Indictment that they're in.

And I would suggest to the Court that in the document provided --

THE COURT: Is that witness also going to take the jury through and compare the particular items that is in the discovery that defendants have and describe through his knowledge and expertise, that these items are what the Government contends them to be?

MR. CORBETT: That would be the Government's anticipation as to what he would do.

Again, in that context, Your Honor, it's my suggestion --

THE COURT: Will this witness be available at the *Daubert* hearing?

MR. CORBETT: Yes, Your Honor.

And the question is when, when the Court wants to do that. Whether the Court wants to do that on March 7th.

THE COURT: March 7th.

MR. CORBETT: If the Court wants to do it that way, we'll be prepared to proceed at that point in time, if the Court wants to do that.

THE COURT: I want to do it March 7th.

## Motion to Compel

**MR. CORBETT:** There is advantage to the Government, based upon the Court's ruling, we'll be better positioned in terms of opening statement what we reasonably tell the jury what we can prove, as to opposed to waiting until the trial as to ruling on whether or not the anticipated testimony will be admissible.

**THE COURT:** Beyond this witness, the one we are talking about, are there any other experts that are going to provide specific expert support as to specific allegations?

**MR. CORBETT:** Your Honor, at this point in -- the answer to that at this point, the Government has looked to securing some additional testimony. We have not yet put ourselves in a position where we can do that.

If we get to that point, we'll communicate that information to both the Court and the defendant as soon as possible, hopefully, before the March 7th *Daubert* hearing, to at least put them in a position to do that.

**THE COURT:** Not hopefully, Mr. Corbett.

**MR. CORBETT:** Necessarily.

**THE COURT:** Necessarily.

I want any witnesses named that you're going to rely upon, any expert witnesses as to specific factual matters, I want any witnesses named by February 28th.

**MR. CORBETT:** Understood, Your Honor.

**THE COURT:** All right.

USA V KOUBRITI, ET AL, 01-80778

## Motion Re Extra Security Measures

With respect to this motion, I'm just reading the summary of the witness testimony now.

I want to review this.  It strikes me that much of the information that the defendants seek will be the subject of the *Daubert* hearing.

And defendants will attend and have an opportunity to question the witnesses, both as to the nature of their opinion, the nature of their testimony, obviously, nature of their opinions.  And more specifically, the bases and reasons for their opinions.  And any documentary support upon which the experts are going to be relying.

It seems to me that the *Daubert* hearing that we're going to have on March 7th, will adequately address more than adequately address any of the issues that the defendants are concerned about in terms of any gaps in providing information by the Government as to expert witness testimony.

In reviewing the summary that's been provided to me, it seems to me that even though it may not be a complete rendition of all of the summary and may not provide all of the bases for the opinions, there is certainly a sufficient amount of information in this summary from which the defense can prepare to question the witnesses at the *Daubert* hearing.

With respect to the Bill Of Particulars motion, I will take that under advisement.

I'll read the case that Mr. Soles has provided and

USA V. KOUBRITI, ET AL. 01-80778

## Motion Re Extra Security Measures

I'll review that and we'll have a written opinion.

They're two other motions that remain pending in this case.  One, I've already dealt with.

The defendants have filed a motion for a *Daubert* hearing prior to opening statements.  I've indicated that we will have such a hearing.  That hearing will be conducted on March 7th.

So that motion, to the extent it is requesting a hearing and requesting an opportunity to test the opinions and reliability and qualifications of the experts, that motion is granted.

Another motion has been filed by defendants regarding excessive security measures.

I've not received a response from the Government about this motion, but let me tell the parties what I intend to do about this motion.

First of all, I have turned over all matters concerning the provision of security to the United States Marshal for this district, who is in the courtroom today.

It would be not only presumptuous of me as a judge, but far beyond my capability to make determinations as to what security measures are necessary and what security measures are not necessary.

This is a matter wholly within the responsibility and authority of The United States Marshal's Service.

## Motion Re Extra Security Measures

However, having said that, what I intend to do is to request The Marshal and his deputies when a final security plan is provided -- is completed, I'm requesting The Marshal and his deputies to provide a complete briefing to the Government, Government counsel, rather, and defense counsel, as to all security measures that will be taken with respect to this trial.

In addition, I am asking the Court Administrator, David Weaver, to attend this briefing session, and to, also, provide a complete briefing as to what other logistical support measures are being taken in order to support the trial.

Following that briefing session, if any counsel wishes to bring a motion as to anything in particular that has been covered in this briefing session, I will consider motions at that time.

In other words, if they're any particular security measures that The Marshal is proposing that defense counsel are concerned about, could somehow compromise or undermine the defendants' due process rights, defense counsel will have and opportunity to bring a motion prior to trial to address those specific security measures.

And I will work with The Marshal if I believe there is a concern items of the defendant's due process rights.

I cannot respond to a general motion about

## Motion Re Extra Security Measures

excessive security.

However, all I can do is ask the marshal to be present.  And I think the marshal and I, in fact, have already discussed this.

He's indicated we will have the full cooperation of his office and himself at this briefing.  And counsel will be free to ask The Marshal questions.

If, out of that meeting, any concerns arise, those will be brought to the Court by way of motion.

So, for now, I am going to dismiss or deny, rather, without prejudice, the motion *in limine* regarding excessive security measures.

That means that defense counsel will be free to bring up any specific security matters that they're concerned about.

Obviously, it will not be necessary, now, for the Government to file a response to this motion.

All right.  There's one other matter I want to discuss with counsel.  I've alluded to it.  Then I want to see counsel up at the bench, off the record.

As counsel know, we are, we, the court, are in the process of developing a website for this case to make information available, generally, to the public.

We're doing this because we anticipate that there may be -- I am not certain the extent that there may be a

## Motion Re Extra Security Measures

significant amount of public interest and media attention given this case.

Because the court's resources are already going to be burdened in handling the logistics of this case, it is my intent to do whatever we can to provide as much information as possible to the public, to the media, at a minimum, a logistical burden to the court.

I believe that this can be accomplished through this website. I might also note, I see we have members of the media here.

On this website, once we get it up and running, there will be an opportunity for any member of the media to apply to the Court for credentials for the trial.

We anticipate that we will probably have more interest in the trial then we can reasonably accommodate in the courtroom. And we have to have some way of being able to gage or measure how much media interest there will be.

So I'm, I suppose, telling everybody that there will be a website and we might -- my law clerk is handing me a note. Apparently, in the process of developing it.

We're not going to have a separate website it will be on the court website with a link?

THE LAW CLERK: Right.

THE COURT: Apparently, as they're developing the Website, this website will be reached through the court's

## Motion Re Extra Security Measures

general website which, is www.mied.uscourts.gov and that will be the -- what's the proper term, hot link, link through that website to the Website for this court.

And there will be a -- there will be an application procedure for media credentials.

We don't know how much -- obviously, how much public interest or how much media attention the case will receive. But based on other cases around the country, we're following this procedure.

This is a procedure that's been followed in a number of other cases in a number of other courts around the country that has worked well.

So I ask only that counsel cooperate with the court and court personnel in all of these matters.

I've already asked counsel if they would consent to having all of the pleadings and court orders that are not sealed, put on this website on a going forward basis. Not all previously filed pleadings and orders, but on a going forward basis. And I'm waiting to hear from counsel.

I've not heard from any counsel yet, at least not officially. I'm waiting to hear from counsel on that.

MR. CONVERTINO: Judge, we did consent to that.

THE COURT: You've consented?

MR. CONVERTINO: Yes, sir.

THE COURT: If defense counsel are not ready to

USA V KOUBRITI ET AL 01-80778

41

## Motion Re Extra Security Measures

respond, that's fine.

But we need to get this established, so -- Mr. Thomas?

MR. THOMAS:  I can address that issue, judge?

THE COURT:  If you would.

MR. THOMAS:  I don't believe there is a consensus among defense counsel that at the Website be enacted.

In fact, I thought there was correspondence to the court indicating that they did not go along with it.  There are certain issues regarding that web site.

THE COURT:  When was the correspondence?

MR. THOMAS:  Correspondence?  I received a copy of it on Friday.

MR. MORGAN:  It hasn't been delivered yet.

THE COURT:  I'm glad to hear that.  Something else I didn't get.

My clerk is very nervous over here.

MR. MORGAN:  It's not her fault.

MR. THOMAS:  This wasn't a secret meeting.  This is not something we've withheld from the Bill Of Particulars.

But, in any event, at the Court's request, I did poll counsel.  I'm aware counsel are not in agreement there be a website.  And that there are reasons for that; and that is, we have a gag order in affect and it's consistent with

USA V KOUBRITI ET AL 01-80778

## Motion Re Extra Security Measures

the gag order in certain respects.

**THE COURT:** The gag order doesn't apply to pleadings and matters discussed in court.

**MR. THOMAS:** Except for, as the Court is aware, there are pleadings that are filed and there's a way to file pleadings and ways to not filed pleadings.

Brother counsel said there's not enough specificity in the Indictment. I suggest, on my behalf, there may be too much. And that, in essence, what has happened is that the Government now is in a broad way --

**THE COURT:** You mean be careful what ask you for, may get it?

**MR. THOMAS:** Be careful what your brother counsel asks for, you may get it.

But I'm not taking away from the fact I support him in a request for a Bill Of Particulars. But just to give you an example of how it works.

If we now have this broad ranging Indictment which talks about terrorism and a link to terrorism, which we don't have any discovery on to show the specific links to terrorism or specific groups that are terrorists.

And, yet, we see in the first six pages of the Indictment this, this preface, which is, essentially in my view, linking all of the things that are bad about Islam and laying it at the doorstep of these defendants.

USA V KOUBRITI ET AL 01-80778

## Motion Re Extra Security Measures

THE COURT:  Your concern, Mr. Thomas, as you're expressing it -- let me try to paraphrase it, is that the Government will try its case through the Website, thereby taint the media and the jury against your clients.

MR. THOMAS:  We could have done that, too.

When John Ashcroft made a statement on CNN that links these people to terrorism, acts of terrorism, in violation of this Court's order.

I could have filed a motion which would have very specifically set forth what it was I felt was wrong with Mr. Ashcroft in his statement at the time.  I didn't do that.

We -- there's a way we can plant seeds and litigate.

THE COURT:  Mr. Thomas, let me stop you there.

What I am -- what I am talking about putting on the Website --

MR. THOMAS:  Are pleadings.

THE COURT:  -- pleadings and court orders.

If they're any specific pleadings that counsel wish not to have on the Website, it will be a screening process by which counsel can object to each others' pleadings.

And I'll, I'll -- I can tell you, I'm not going to put anything on the Website.  I will not put anything on the Website that all counsel do not agree to.

MR. THOMAS:  So in the last instance, my other

USA V KOUBRITI  ET AL. 01-80778

## Motion Re Extra Security Measures

argument is that that website is available to anyone that logs in; and that could be jurors, in violation of the Court's order, friends of jurors and family members who will then discuss it and become very informed.

It's not going to be a secret that these particular jurors, within their family, have been called to sit on this case. They won't discuss the case, should not discuss the case.

What we do now by putting it on the Website, is make the temptation of discussion even further.

I expect --

**THE COURT:** I have to say, Mr. Thomas, if the jurors are going to disobey my instructions to not read newspapers, not watch television, not read, not listen to the radio, and to stay off The Internet, the least of our problems is going to be that they're reading the court's official website as to pleadings and court orders.

**MR. THOMAS:** Except what we're doing is participating in the very thing we're trying not to do in any way squelch publicity, but to have this matter not get into a media frenzy.

**THE COURT:** All right. What I would like counsel to do is to consider this.

As I've indicated, the guidelines adopted by the Judicial Conference for providing electronic access to court

USA V KOUBRITTI ET AL 01-80778

## Motion Re Extra Security Measures

filings require consent of counsel.

If counsel are not willing to give a broad consent to such filing to posting of such filings, I would ask counsel to consider this.

I would ask counsel to consider posting on the Web, all orders and pleadings, which all counsel agree do not raise issues of prejudice.

Let me explain why we are doing this.  In a case of this nature, it may well be -- we don't know, but it may well be we will be inundated with requests from the media for copies of pleadings.

The court -- as I've said, the court's resources are already strained and taxed.  By making available to the public pleadings and court orders that can be accessed freely by the media, without having to -- without the media have to come to the courthouse, ask the clerks to go to the files.

That will be a tremendous assistance in alleviating the burden for court personnel and, I believe, for the media as well, and I believe for the media as well.  I think it serves everybody's interest to do that.

If they're specific documents, specific pleadings, exhibits to specifics pleadings, perhaps, portions of documents that counsel are concerned about, we can keep those off.  We can keep those off the website.

But I would ask counsel to consider that, as I've

## Motion Re Extra Security Measures

indicated.

I'm not -- because of the guidelines established by the Judicial Conference with respect to electronic access, I'm not going to do anything without counsels' consent on this issue.

I understand there's a lot of sensitivity.  Mr. Thomas' points are not without merit.  But I believe that the defendants interests and the courts interests and the Governments interests can be accommodated by a procedure such as I have suggested or some other procedure.

I don't have all the answers.  If counsel have other suggestions as we can get some or a bulk of these materials on the Website, I will -- I'll consider it.

All right.  Anything else on the record, Mr. Convertino?

MR. CONVERTINO:  No, thank you, judge.

MR. MORGAN:  Can we go back to -- back to a small aspect of the experts, prospective *Daubert* hearing?

THE COURT:  Yes.

MR. MORGAN:  Namely, I ask this only with regard to the academic two professors.

Who, as the Court can see from the summary, have reviewed something in the tapes.

And I say "something", because they're 70 tapes, 90 minutes of talk on each tape.  That's 100 hours of tape, I

USA V KOUBRITI  ET AL 01-80778

## Motion Re Extra Security Measures

guess.

THE COURT:  More specificity as to what they've reviewed?

MR. SOLES:  Exactly.  We did receive at 1823 last Friday, evening, 6:23 p.m., 11 sheets of paper that are excerpts.  Some a little longer then others.  Some as short as one single sentence.

I don't know if this is what the experts are going to rely on and solely this or -- there was no explanation for this.

THE COURT:  I understand.

They're two such experts, I believe.  Is that right, academic experts?

MR. CONVERTINO:  Yes, sir.

THE COURT:  In preparation for the hearing -- the hearing is going to be Friday March 7th.

In preparation for the hearing, by Monday, March 3rd, if you could, as to those two witnesses, provide them with a list of the specific evidence upon which the experts will be relying in their testimony set that they can prepare to *voir dire* the experts, at least, on those points.

All right?

MR. CORBETT:  Yes, Your Honor.

THE COURT:  All right.

Can I see counsel up here at the bench, please?

USA V KOUBRITI, ET AL, 01-80778

(A discussion was held off the record)

THE COURT:  All right.   Anything else?

MR. CONVERTINO:  No.   Thank you.

MR. CORBETT:  Nothing from the Government.

THE COURT:  Anything else from the defendants?

MR. THOMAS:  No, judge.

THE COURT:  Very good.  Thank you.   Have a good weekend.

(Whereupon court was in recess at 3:20 p.m.)

USA V KOUBRITI   ET AL  01-80778

CERTIFICATE OF COURT REPORTER

I certify that the foregoing is a correct transcript from reported proceedings in the above-entitled matter.

CAROL S. SAPALA, CSR, RPR, CM                    Date