UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

 v.            Cr. No. 01-80778

             Hon. Gerald E. Rosen

KARIM KOUBRITI,

    Defendant.

_____/

## MOTION TO DISMISS FOURTH SUPERSEDING
## INDICTMENT ON DUE PROCESS GROUNDS

**NOW COMES** Defendant, **KARIM KOUBRITI,** by his attorneys RICHARD

HELFRICK and JAMES GEROMETTA, of the Federal Defender Office, and moves this

Honorable Court, pursuant to the Due Process Clause of the Fifth Amendment and the

Court's Supervisory Power, to dismiss with prejudice the Fourth Superseding Indictment.

Defendant files a supporting Brief and further states:

**1)** Defendant is charged in a Fourth Superseding Indictment with Conspiracy to

Commit Mail Fraud, 18 U.S.C. §§ 371, 1341;

**2)** Some of the factual allegations underlying the present Indictment were contained

in the Third Superseding Indictment; some of the anticipated witnesses testified at the

previous trial; and the Government argued at the previous trial that the alleged mail fraud was

actually a form of "economic jihad";

**3)** The Fourth Superseding Indictment should be dismissed due to government misconduct including, but not limited to:

**a)** The allegations contained in Paragraph 9 (a)-(g) of the Defendant's Amended Motion for Judgment in Favor of the Defendant's notwithstanding the Verdict or, in the alternative for a New Trial;

**b)** The information contained in the Government's Consolidated Response Concurring in the Defendants' Motion for a New Trial and Government's Motion to Dismiss Count One without Prejudice and Memorandum in Support thereof;

**c)** The information disclosed to the Court and defense counsel on June 29, 2004, on the CD-ROM which is subject to the Protective Order of June 29, 2004;

**d)** Any undisclosed classified *Brady* and/or *Giglio* evidence or material ;

**e)** Yet to be disclosed evidence of government misconduct which has been uncovered in any of the collateral investigations being conducted by the Government;

**4)** The Court should require the Government to disclose the information contained in paragraphs 3 (d) & (e), *supra.;*

**5)** The Government misconduct which occurred violated the Defendant's Fifth Amendment right to Due Process of Law and should result in the dismissal of the Fourth Superseding Indictment;

**6)** The Court should exercise its Supervisory Powers and dismiss the Fourth Superseding Indictment;

**WHEREFORE,** Defendant moves this Honorable Court to enter an Order dismissing with prejudice the Fourth Superseding Indictment.

Respectfully submitted,

**FEDERAL DEFENDER OFFICE**
Legal Aid & Defender Assn., Inc.


s/ Richard M. Helfrick, P33323

s/ James Gerometta, P60260 (w/consent)
Attorneys for Mr. Koubriti
645 Griswold, Ste. 2255
Detroit, MI  48226
Phone: (313) 961-4150
E-mail: richard_helfrick@fd.org

Dated:  July 25, 2005

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                    Plaintiff,

          v.                                        Cr. No.  01-80778

                                                    Hon. Gerald E. Rosen

KARIM KOUBRITI,

                    Defendant.
_____/


**BRIEF IN SUPPORT OF
MOTION TO DISMISS FOURTH SUPERSEDING INDICTMENT
ON DUE PROCESS GROUNDS**

## TABLE OF AUTHORITIES

### United States Supreme Court

*Hampton v. United States,*
425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Russell,*
411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) . . . . . . . . . . . . . . . . . . . . . 4

### United States Court of Appeals

*United States v. Cuervelo,*
949 F.2d 559, 567 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Hogan,*
712 F.2d 757 (2nd Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Valencia,*
541 F.2d 618 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### United States District Court

*United States v. Banks,*
383 F.Supp. 389, 392 (D. S.D. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Leung,*
351 F.Supp.2d 992 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Marshank,*
777 F.Supp. 1507 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

**I.**

Mr. Koubriti is charged in a Fourth Superseding Indictment with Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. §§ 371, 1341.  Mr. Koubriti was previously charged in a Third Superseding Indictment with, among other things, Conspiracy to Provide Material Support of Resources to Terrorists, 18 U.S.C. §§ 371, 2339A.

The present  allegations regarding Mail Fraud were alleged in the Third Superseding Indictment.  For instance, the Government alleged that: "The object of the conspiracy was, among other things, to cause economic harm to U.S. businesses, . . ."  Count One, ¶ 9, page 9.  The Government also alleged that "[o]n or about July 5, 2001, Defendants, KARIM KOUBRITI and AHMED HANNAN, were involved in a traffic accident in Dearborn, Michigan."  Count One, Overt Acts, ¶ 25, page 19.  This is the identical motor vehicle accident which is referenced in the Fourth Superseding Indictment, "General Allegations" at ¶ 4, page 3.

During the trial of Mr. Koubriti on the Third Superseding Indictment, the Government called witnesses who testified relating to the insurance claim submitted by Mr. Koubriti which is the basis of the Fourth Superseding Indictment.  It is anticipated that these same witnesses would testify at any trial on the Fourth Superseding Indictment. During the closing argument in that case, the Government argued that the allegedly false insurance claim was part of an "economic jihad" being perpetuated by the Defendants.  The present Fourth Superseding Indictment is, as Robert Morgan, Esq. would say, the "illegitimate stepson" of the Government's prior prosecutorial misconduct.

## II.

**Prosecutorial Misconduct:**

Following the trial on the Third Superseding Indictment, the Defendants filed an Amended Motion for Judgment in Favor of the Defendants Notwithstanding the Verdict or, in the alternative, for a New Trial.  In that Motion the Defendants alleged "that the Government's pervasive pattern of outrageous misconduct deprived them of a fair trial and violated the very integrity of the judicial system."  Motion, *supra.,* at ¶ 9.  The Motion went on to specify at least seven grounds of prosecutorial misconduct.

Following the disclosure of the now infamous Butch Jones letters and the Court ordered file review, the Government filed its Consolidated Response Concurring in the Defendants' Motions for a New Trial and Government's Motion to Dismiss Count One without Prejudice.  In that Consolidated Response, the Government enumerated numerous additional instances of Government misconduct.

For instance, the file review disclosed that the CIA and the Turkish National Police, Intelligence Division had an opinion quite different of the sketches in the day planner than was presented to the jury.   Moreover, some officials within the U.S. Air Force agreed with the defense theory regarding the HAS (Hardened Aircraft Shelter), that is, that it was a map of the Middle East.  That was never disclosed to the defense.

Nor was the fact that photos were requested and obtained relating to the Queen Alia hospital.  It was not disclosed to the defense that the Las Vegas FBI had a very different opinion regarding the so-called casing tape and that the dialect on the tape - Tunisian - was posing problems for the interpreters.  Undisclosed was important impeachment material

2

relating to Hmimmsa and his views and attitudes toward the United States.  Nor was it disclosed that one of the Government's translators, Marwan Farhat, was a convicted felon.

The Government's disclosures following the file review, of course, did not purport to tell the whole story.  "We recognize that this memorandum does not address all of the claims defendants have raised (or could be expected to raise) in support of their motions."  Consolidated Response, at page 13.  The CD-ROM which was turned over to the Court and Defendants contains additional instances of Government Misconduct which the Court should take into consideration in deciding whether to dismiss the Fourth Superseding Indictment.

The file review discloses, in addition to what has been publicly disclosed to date:

1)      Interviews of witnesses that would have supported the defense theory that Ali Ahmed was the author of the sketches in the day planner; 6.00000-6.1109[1]

2)      Information tending to show that Marwan Farhat was meeting with and talking to Abdel Makalda with a view to educate Makalda as a witness against Mr. Koubriti; 7.00000-7.10021

3)      The deportation of Zuhair Ben Mohammed Roussi - a witness who could have provided exculpatory evidence on behalf of Mr. Koubriti; 8.00000 - 8.10001

4)      Evidence that AUSA Convertino directed  Special Agent Ed Seitz to look into obtaining a S-1 Visa for Youssef Hmimmsa–something the Government denied throughout the trial;  9.15001

5)      FBI interviews of witnesses who supported the defense theory that Mr. Koubriti was not a particularly religious individual; 10.50000 - 10.50009

---

[1]References are to the Government's "Outline of Unclassified Court Ordered Disclosure and Related Explanatory Materials".

3

6)      Violation of Mr. Koubriti's Sixth Amendment right to counsel
by placing a jail house informant in the Wayne County Jail in
order to elicit information from him; 10.60000 - 10.6005;

## III.

In order to correctly rule on the present Motion and arrive at the proper remedy, the Court should order discovery in two important areas: **(1)** the Government should be required to disclose any exculpatory classified *Brady* and/or *Giglio* material that should have been disclosed prior to or during trial on the Third Superseding Indictment; and, **(2)** the Government should be required to disclose any additional evidence of prosecutorial misconduct which has been discovered during any of the independent investigations being conducted by the Government and which relate to the prosecutions of Mr. Koubriti.[2]

It is necessary for the Court and the parties to have all of this information.  Only then can the Court have the totality of the circumstances and rule accordingly.

## IV.

**Due Process:**

In *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the Supreme Court recognized that there could be situations in which the conduct of government officials is so outrageous that Due Process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.  93 S.Ct. 1642-43.  *See also, Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).  "A motion to dismiss an indictment alleging outrageous governmental conduct is a question of law

---

[2]This particular request is also the subject of a separate "Motion for Discovery, RE: Independent Investigations" which was filed on July 19, 2005.

4

directed to the trial judge and review of rulings thereon is *de novo*."  *United States v. Cuervelo,* 949 F.2d 559, 567 (2nd Cir. 1991).  In *Cuervelo, supra.,* the Second Circuit held that a remand for an evidentiary hearing was necessary based upon the defendant's allegations of an undercover agent's outrageous conduct by engaging in sexual relations with the defendant.

In *United States v. Marshank,* 777 F.Supp. 1507 (N.D. Cal. 1991), the district court dismissed the indictment against the defendant due to government collaboration with the defendant's attorney during the investigation and prosecution holding that the defendant's Fifth (Due Process)  and Sixth Amendment rights were violated.  The government made an argument in *Marshank, supra.,* which the government can be expected to make in the present case, to wit, "[t]he government maintains that even if it violated Marshank's Sixth Amendment rights in connection with the first indictment, the second indictment against Marshank remains untainted because it involves different charges."  That argument was rejected by the district court which relied upon a Sixth Circuit case:

> In *United States v. Valencia,* 541 F.2d 618, 622 (6th Cir. 1976), the Sixth Circuit rejected an argument, similar to the one offered by the government here, that the defendant's Sixth Amendment rights had not been violated because the government interference was related to charges which had been dismissed and was unrelated to the subsequent indictment challenged by the defendant.  However, the court ruled that dismissal of an indictment against a defendant does not bring an end to the prosecution of the defendant if the defendant is later reindicted on charges which "grow out of the same dealings that were subject of the [prior] charges."  *Valencia,* 541 F.2d at 622.

*United States v. Marshank, supra.,* 777 F.Supp. at 1525-1526.

5

In the present case, the Fourth Superseding Indictment involving conspiracy to commit mail fraud was part and parcel of the now dismissed Count One of the Third Superseding Indictment.   It is not even a separate and distinct charge but rather grows out of the same dealings that were the subject of the prior charge.

This Court is well aware of the so far disclosed instances of government misconduct in this case.  The Government, itself, to a certain extent, has recognized the extent of the misconduct and acceded to a new trial and dismissal of Count One of the Third Superseding Indictment based upon numerous instances of misconduct.[3]  That outrageous government misconduct occurred is not an issue - the right remedy at this juncture is the only issue.

**V.**

**<u>Supervisory Power:</u>**

In *United States v. Valencia,* 541 F.2d 618 (6th Cir. 1976), the Sixth Circuit held that the indictment would be dismissed pursuant to the Court's supervisory power in the event, on remand, the defendants could show prejudice from the government's intrusion into the attorney-client relationship by a government informant who acted as the attorney's secretary. The Court stated: " . . . we are concerned here not only with a Sixth Amendment constitutional contention, but also with the more comprehensive and less restricted supervision of federal criminal prosecutions to insure that they are conducted fairly and according to 'civilized standards of procedure and evidence.' *McNabb v. United States,* 318 U.S. 332, 340-41, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943)."

---

[3]*See also,* "Justice Official says U.S. Mishandled Handling of Terrorism Case" *Detroit Free Press,* May 6, 2005.

6

The supervisory power can be utilized whenever the administration of justice is tainted:

> The untainted administration of justice is certainly one of the most cherished aspects of our institutions.  Its observance is one of our proudest boasts.  This Court is charged with supervisory functions in relation to proceedings in the federal courts. Therefore, fastidious regard for the honor of the administration of justice requires the Court to make certain that the doing of justice be made so manifest that only irrational or perverse claims of its disregard can be asserted. *Communist Party of the United States v. Subversive Activities Control Board,* 351 U.S. 115, 124, 76 S.Ct. 663, 668, 100 L.Ed. 1003 (1955).

*United States v. Banks,* 383 F.Supp. 389, 392 (D.  S.D.  1974).

In *United States v. Marshank,* 777 F.Supp. 1507 (N.D. Cal. 1991) the district court stated:

> The three legitimate bases for the exercise of the supervisory power are: (1) to remedy a violation of a statutory or constitutional right; (2) to preserve judicial integrity; and (3) to deter future illegal conduct. . . .
>
> The supervisory power has frequently been used by federal courts as a means of sanctioning and deterring prosecutorial misconduct.  "An important function of our supervisory power is to guarantee that federal prosecutors act with due regard for the integrity of the administration of justice." . . .
>
> It is well-established that a federal court may use its supervisory power to dismiss an indictment on the basis of government misconduct. . . . "As such, dismissal is used as a  prophylactic tool for discouraging future deliberate governmental impropriety of a similar nature." . . .

*Marshank, supra,* 777 F.Supp. at 1528 - 1529 (footnotes and citations omitted).  The present case is clearly a prime candidate for the exercise of this Court's supervisory power. *See also,*

7

*United States v. Hogan,*712 F.2d 757 (2nd Cir. 1983); *United States v. Leung,* 351 F.Supp.2d 992 (C.D. Cal. 2005).

**VI.**

**Conclusion:**

For the reasons set forth herein, Defendant requests this Honorable Court to Order discovery as requested to be followed by entry of an Order dismissing the Fourth Superseding Indictment with prejudice.

Respectfully submitted,

**FEDERAL DEFENDER OFFICE**

s/ Richard M. Helfrick, P33323

s/ James Gerometta, P60260 (w/consent)
Attorneys for Mr. Koubriti
645 Griswold, Ste. 2255
Detroit, MI  48226
Phone: (313) 961-4150
E-mail: richard_helfrick@fd.org

Dated:  July 25, 2005

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

    Plaintiff,

  v.              Cr. No. 01-80778

                Hon. Gerald E. Rosen

KARIM KOUBRITI,

    Defendant.

_____/


## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2005 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Alan Gershel
    Eric Straus
    Assistant U.S. Attorney
    211 W. Fort St., Ste. 2001
    Detroit, MI  48226


       s/ Richard M. Helfrick, P33323