UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                Cr. No. 01-80778

v.                                    Hon. Gerald E. Rosen

KARIM KOUBRITI,

                    Defendant.

_____/

**MOTION TO DISMISS FOR VIOLATION OF THE
DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT**

**NOW COMES** Defendant, **KARIM KOUBRITI,** by his attorneys RICHARD

HELFRICK and JAMES GEROMETTA, and moves this Honorable Court to enter an Order

dismissing the Fourth Superseding Indictment for violation of the Double Jeopardy Clause

of the Fifth Amendment  Defendant files a supporting Brief and further states:

**1)**     Defendant is presently charged in an Indictment with Conspiracy to Commit

Mail Fraud, 18 U.S.C. §§ 371, 1341;

**2)**     Defendant was previously charged in a Third Superseding Indictment with

Conspiracy to Provide Material Support to Terrorists, 18 U.S.C. §§ 371, 2339A, and various

Fraud related offenses;

**3)**     On June 3, 2003, Defendant was found guilty on Counts One and Two of the

Third Superseding Indictment;

**4)**     Defendant filed a Motion for New Trial and several supplemental Briefs in

support thereof following the verdict.  The Court ordered a complete file review by the

1

Government and ultimately the Government filed a Response concurring in the Defendant's Motion for a New Trial and dismissing Count One;

5)      On September 2, 2004, this Court entered an Opinion and Order dismissing Count One and ordering a new trial;

6)      The Double Jeopardy Clause of the Fifth Amendment bars retrial following a mistrial provoked by prosecutorial misconduct. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083 (1982);

7)      In cases where the misconduct remains hidden until after a verdict is returned and an acquittal is avoided by prosecutorial misconduct the same rationale should prevent retrial.  See *United States v. Wallach*, 979 F.2d 912, 916 (2nd Cir. 1992);

8)      This case presents one of the most serious and rampant instances of prosecutorial misconduct ever reported;

9)      The Sixth Circuit applies a totality of the circumstances test to determine whether two charged conspiracies are the same offense for purposes of the Fifth Amendment. *United States v. Benton*, 852 F.2d 1456, 1462 (6th Cir. 1988);

10)      The two conspiracies charged by the Government occur at a common time, have three co-conspirators in common, have the same facts supporting them, and occurred at the same place;

11)      Under the totality of the circumstances test of *Benton*, the two conspiracies are the same offense.

2

**WHEREFORE,** Defendant requests that this Honorable Court enter an Order dismissing the Fourth Superseding Indictment for violation of the Fifth Amendment's Double Jeopardy Clause.

Respectfully submitted,

**FEDERAL DEFENDER OFFICE**
Legal Aid & Defender Assn., Inc.


s/ Richard M. Helfrick, P33323 (w/consent)

s/  James Gerometta, P60260
Attorneys for Mr. Koubriti
645 Griswold, Ste. 2255
Detroit, MI 48226
Phone: (313) 961-4150
E-mail: james_gerometta@fd.org

Dated:  July 28, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                Plaintiff,

                                       Cr. No. 01-80778

                                       Hon. Gerald E. Rosen

KARIM KOUBRITI,


                Defendant.
_____/



**BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR VIOLATION OF THE
DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT**

**I.**

Mr. Koubriti, along with Ahmed Hannan, Abdel Elmardoudi and Farouk Ali-Haimoud, went to trial on the Third Superseding Indictment.  On June 3, 2003, Mr. Koubriti was found guilty on Counts One and Two of the Third Superseding Indictment.  Following the verdict, the Defendant(s) filed a Motion for New Trial and a couple of supplemental memorandum in support thereof.  On December 12, 2003, at a hearing regarding the infamous Butch Jones letter, the Court ordered the Government to conduct a thorough review of the case.  Following that review, the Government filed a Response Concurring in the Defendants' Motions for a New Trial and Motion to Dismiss Count One.  On September 2, 2004, this Court entered an Opinion and Order granting the Defendants a new trial and dismissing Count One of the Third Superseding Indictment. *See, United States v. Koubriti,* 336 F.Supp.2d 676 (E.D. Mich.  2004).  Defendants' Koubriti and Hannan are charged in a Fourth Superseding Indictment with Conspiracy to Commit Mail Fraud.  Mr. Ali-Haimoud is a cooperating witness for the Government.

Count One of the Third Superseding Indictment charged the Defendants with Conspiracy to Provide Material Support to Terrorists.  The indictment charged that from February 1998 until the date of the indictment the four defendants were engaged in a conspiracy to aid an unspecified terrorist group.  Third Superseding Indictment, ¶ 8.  The allegations in the Indictment were very broad and ranged from providing money to groups overseas to planning attacks on the United States.  One element of the alleged conspiracy was a plan to commit fraud in order to both support terrorist activities and to economically damage the United States.  As part that conspiracy the Defendants were to provide "services and tangible items to individuals."  Id. ¶ 10(a).  As an overt act of the conspiracy the

1

Indictment charges that Defendants Koubriti and Hannan were involved in a traffic accident on July 5, 2001.  Id. ¶ 25.

These general allegations were elaborated on at trial through the testimony of Youssef Hmimmsa.  Hmimmsa testified regarding the Defendants' alleged involvement in economic jihad.  According to Hmimmsa, Ali-Haimoud, Hannan, and Koubriti met with an unidentified Tunisian regarding how to fake an automobile accident and defraud insurance companies. Trial Tr. 4/15/2003, pp. 187 and 191-192.  The Government later introduced the testimony of Kathleen Gleason, regional claims manager for Titan Insurance.  According to Ms. Gleason's testimony, Titan denied claims made by Hannan and Koubriti relating to the July 5, 2001 auto accident.  Titan believed that the claims were fraudulent because the two men were  taking truck driving classes when they claimed to be too injured to work and were attending classes when they were supposed to have been receiving medical treatment.  Trial Tr. 4/25/2003, pp. 4330-4333.

The Government also introduced the insurance records showings claims for payment for physical therapy treatments for Defendants Hannan and Koubriti, and household service payment forms.  According to those forms, Ahmed El-Kattan performed services for Mr. Hannan and Ali-Haimoud performed services for Mr. Koubriti.  Trial Tr. 4/23/2003, pp. 4073-4074. El-Kattan testified that he performed no household services for Mr. Hannan after his accident.   Trial Tr. 4/23/2003, pp. 4069-72.

In closing argument, the Government stated that the Defendants had committed insurance fraud, Trial Tr. 5/19/2003, pp. 6030, 6033, and that this accident was part of the "jihad" or the conspiracy to provide material support to terrorism.  Implying that the fruits of the fraud would be used to support terrorist activities.  Id., p. 6046-47.

In Count One of the Fourth Superseding Indictment, Defendants Hannan and Koubriti are charged with Conspiracy to Commit Mail Fraud.  The Indictment alleges that between July 5, 2001, and September 17, 2001, the Defendants attempted to defraud Titan Insurance Company of money and property.  Fourth Superseding Indictment, ¶ 1.  As part of that scheme they are alleged to have submitted physical therapy claims for dates and times when they were employed or enrolled in driving school, and submitted claims for household services that were never performed.  Id, ¶ 2.  The overt acts of conspiracy begin immediately following the Defendants' July 5, 2001 accident with their request for ambulance transportation and then continue to track their submission of benefit and payment requests, including the submission of those documents admitted in the first trial as evidence of the Defendants' participation of the economic jihad to bring down American insurance companies and provide support to terrorists. [1]

## II.

The Fifth Amendment's Double Jeopardy Clause protects criminal defendants from retrial for the same offense after acquittal.  The Supreme Court has extended the protection to cases where Government misconduct deliberately provokes a mistrial to prevent an acquittal.  *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083 (1982).  In cases where the misconduct remains hidden until after a verdict is returned and an acquittal is avoided by

---

[1]Those documents include the following: (1) Application of Benefits, Ahmed Hannan, Exhibit 6A and Fourth Superseding Indictment ¶ 10; (2) Application of Benefits, Karim Koubriti, Exhibit 6B and Fourth Superseding Indictment ¶ 11; (3) Request for Reimbursement of Mileage, Exhibit 68P and Fourth Superseding Indictment ¶ 14 or 22 (item not sufficiently identified in transcript); (4) Replacement Services Request, Ahmed Hannan, Exhibit 68Q-S and Fourth Superseding Indictment ¶ 15; and (5) Replacement Services Request, Karim Koubriti, Exhibit 68L-O and Fourth Superseding Indictment ¶ 23.

3

prosecutorial misconduct, the same rationale should prevent retrial.  See *United States v. Wallach*, 979 F.2d 912, 916 (2nd Cir. 1992).

Both indictments allege a violation of the federal conspiracy statue, 18 U.S.C. § 371. In conspiracy cases, to determine whether there is a violation of the Double Jeopardy Clause in successive criminal prosecutions, the Court must look to determine whether the Government has charged the defendants twice with forming the same agreement to commit crimes.  If the same agreement constitutes a conspiracy to violate several criminal statues, Double Jeopardy still prevents retrial on the same agreement even if charged as having a different object.

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy the statute punishes.  The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

*Braverman v. United States*, 417 U.S. 49, 53; 63 S.Ct. 99, 102 (1942).

To determine whether two indictments charge the same conspiracy, the Sixth Circuit applies a totality of the circumstances test relying on five factors: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged, or any other description of the offenses charged which indicates the nature and scope of the activity; and (5) the places where the events alleged as part of the conspiracy took place.  *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983).  If several of the factors differ between the conspiracies, "the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses."  *Id*. at 1256-57.

4

**The two conspiracies charged are the same offense for purposes of double jeopardy.**

The Sixth Circuit's totality of the circumstances test was recently applied in *United States v. Shepard*, 89 F.Supp.2d 884 (W.D. Mich. 1999).  In *Shepard*, the defendant had been indicted for drug conspiracy in the Western District of Michigan following his plea to a drug conspiracy in the Western District of Texas.  The Texas conspiracy was alleged to have begun on March 22, 1996.  The Michigan conspiracy was alleged to have been in effect from March 22, 1996 until May 1999.  The court found that the fact the two agreements began at roughly the same time was evidence of a single conspiracy. *Shepard,* 89 F.Supp. at 888.

While the Michigan indictment alleged more conspirators than the single co-conspirator of the Texas indictment, the court found that the one conspirator in common weighed in favor of finding a single conspiracy.  The court found that the defendant "should not be punished twice because of the government's failure to name or inability to determine the identities of co-conspirators" when the first indictment was returned.  *Id.*

The statutory offenses charged in the two *Shepard* indictments were the same, except for the fact the Michigan indictment added a charge of Interstate Travel in Aid of Racketeering.  The court found that while that charge added geographic territory to the offense, it did not change the basic nature of the agreement to distribute narcotics.  The court held that "one agreement cannot be turned into several agreements . . . merely because the agreement contemplates violation of multiple statutes rather than one."  *Id.* at 888.

The first *Shepard* indictment from Texas alleged one overt act, driving across the Texas-Mexican border.  The second indictment from the Western District of Michigan alleged numerous overt acts, including travel between Michigan, Texas, Colorado, Illinois, and Mexico.  Again, although the second indictment added geographic territory, the basic

5

nature of the agreement to distribute marijuana was unchanged.  "The issue is not whether the conspiracy involved multiple crimes, but whether there were multiple agreements to conspire between the parties."  *Id.* at 889 (citing *Braverman,* 317 U.S. at 53; 63 S.Ct. at 102).

Finally, with regard to the place of the offense, again the second *Shepard* indictment added geography.  "However, a single conspiracy is not transformed into multiple conspiracies because the agreement to conspire contemplates violation of multiple statutes." *Id.*  The addition of geographic area to the scope of the conspiracy did not change the basic nature of the agreement to distribute narcotics.  The *Shepard* court concluded there was only one conspiracy, despite the addition of conspirators and geographic area in the second indictment.  *Id.* at 890.

Defendant Koubriti's case presents this Court with an inverse *Shepard* scenario.  The first conspiracy charged in the Third Superseding Indictment is much broader than the conspiracy charged in the Fourth Superseding Indictment.  However, the conspiracy of the Third Indictment encompasses the agreement to commit the criminal conduct that is the alleged object of the conspiracy in the Fourth Indictment.  Because both indictments reference the same agreement to commit criminal offenses, they charge the same offense for double jeopardy purposes.

Although the Third Indictment alleges a longer span of conspiracy than does the Fourth Indictment, the time frame of the Third Indictment covers the time frame of the conspiracy of the Fourth Indictment.  In hindsight, the time frame of the Third Indictment seems overly broad, beginning in 1998, years before alleged co-conspirators Hannan and

6

Koubriti even applied for entry into the United States.[2]  The Government should not be allowed to escape Double Jeopardy analysis because their initial charge contained an over-broad pleading of the agreement.  The Government has now decided that the charges of the Third Indictment were too broad and that the actual conspiracy was shorter in duration than first believed.  It, however, is still the same criminal agreement.

Likewise, the Government has trimmed the number of co-conspirators it believes were involved.  The Third Indictment charges that four defendants and a number of unknown "brothers" were involved in the conspiracy.  The Fourth Indictment charges two of the defendants as co-conspirators.  However, Al-Haimoud is a cooperating unindicted co-conspirator.  As with the time frame of the conspiracy, the Government has decided that its first charge was over broad and not supported by the facts.  The Government has now zeroed in on Defendants Hannan and Koubriti.  The *Shepard* court ruled that the Government's inability to determine the identities of co-conspirators at the time the Texas indictment was filed should not result in double punishment for the defendant.  In this case, the Government's inability to exercise discretion and charge a conspiracy in the Third Indictment with a scope based on facts with at least some grounding in reality should not result in Mr. Koubriti twice facing jeopardy.

The third factor relied on by *Sinito, supra*, the statutory offenses charged, first appears to weigh against a finding that the Government has recharged the same conspiracy.  However, this factor is not conclusive and if the Court examines the fourth factor, the overt acts and scope of activity charged, it is apparent that the offense of the Fourth Indictment is

---

[2]One could argue that by incorporating the lengthy prelude recounting its version of the history of Islam, the Government alleged a conspiracy that dates from sometime just after the death of Mohamed.

7

subsumed in the charges of the Third Indictment. The Fourth Indictment charges Conspiracy to Commit Mail Fraud. The Third Indictment charges Conspiracy to Provide Material Support to Terrorists. The evidence at trial and the Government's closing argument reveal that they believed that the Defendants agreed to engage in mail fraud in order to defraud insurance companies as part of the economic jihad and use the money to support terrorist activities.

The activity in support of the conspiracy in the Third Superseding Indictment completely encompasses the activity alleged in the Fourth Superseding Indictment. Again, the Third Superseding Indictment alleges a broader conspiracy, but all the activity of the Fourth Superseding Indictment is alleged to have taken place in support of the Third Superseding Indictment's conspiracy. The Third Superseding Indictment lists the July 5, 2001 car accident as an overt act in support of the conspiracy. The Fourth Superseding Indictment alleges activity following that accident as overt acts in support of its conspiracy. The fact the Government alleged only one of the possible overt acts relating to the mail fraud in the Third Superseding Indictment does not immunize them from Double Jeopardy analysis.

> The government, in a criminal conspiracy case, is often presented with a host of co-conspirators and multiplicity of overt acts. An overzealous prosecutor, in drafting the indictment, could choose certain overt acts in one indictment and a different set of overt acts in a second indictment, thereby carving up one conspiracy into two or ever more artificial offenses.

*Sinto*, 723 F.2d at 1256. As *Sinto* indicates, the Court must look beyond coy draftsmanship to all the activity the Government offers in support of its conspiracy claim. In this case, the proof of mail fraud and the exhibits introduced by the Government at Defendants' trial mirrors the overt acts alleged in the Fourth Superseding Indictment. See footnote 1.

8

Finally, both the Third and Fourth Superseding Indictments allege the events of the conspiracy took place in Dearborn and Detroit.  In the first trial the Government attempted to prove and argued that the Defendants agreed to commit a mail fraud to use the proceeds to further their jihad.  It is the exact same agreement the government is now trying to retry in the Fourth Superseding Indictment under a charge of mail fraud.   It cannot be said that "several of these factors differ between the conspiracies" and this Court is obligated to find that the two indictments allege the same offense for double jeopardy purposes.

## The Government has the burden of proof to show separate conspiracies.

Because of the Government's superior access to the proof it intends to offer at trial, once the defendant has made a non-frivolous claim of double jeopardy, the burden shifts to the Government to prove they are not seeking to prosecute the same offense twice.  *United States v. Jabara*, 644 F.2d 574 (6th Cir. 1981).  Defendant having made a non-frivolous claim in this case, the Government has the burden of showing they are seeking to prosecute a separate criminal agreement from the subject of their first prosecution.

## The misconduct in this case mandates a bar to retrial.

This case presents one of the most extraordinary cases of prosecutorial misconduct imaginable.  Defendants filed a lengthy motion for a new trial alleging numerous errors, many of which related to Government misconduct. Following the file review ordered by this Court, the Government agreed that retrial was appropriate.  In their concurring brief, the Government admitted some of the misconduct alleged in the Defendants' brief and reveled new misconduct unknown to the Defendants. Additionally, there are multiple investigations into the conduct of the lead prosecutor and probable misconduct dealing with classified

9

information to which the Defendant is not privy.  See  Defendant's Motion to Dismiss Fourth Superseding Indictment on Due Process Grounds.

In addition to the concessions in the Government's brief, the closing argument of AUSA Convertino alone is enough to bar retrial.  In that argument, an impermissible civic duty argument was made.  That argument played on the jury's and general public's fear of terrorism and was designed to provoke a "better safe than sorry" attitude from the jury as they went into the jury room.  This was clearly designed to prevent an acquittal.  The Government's case  depended of the testimony of Youssef Hmimmsa, who it would not be a stretch to call one of the most unreliable witnesses to ever testify in federal court.  Given the need for the jury to believe Mr. Hmimmsa, the prosecution needed to lessen their burden of proof.  Defendants' objected to this argument and a mistrial should have been declared following arguments.[3]

It cannot be seriously argued that the misconduct here was not egregious and done for the purpose of preventing acquittal.  Under *United States v. Wallach,* 979 F.2d 912  (2nd Cir. 1992), this Court should find the Double Jeopardy Clause of the Fifth Amendment prevents retrial of the Defendants.

---

[3]Rather than declare a mistrial, the trial transcripts indicate the Court told the jury of the historic importance of the case.  The Court undermined the Defendants' defense that the Government's evidence was a product of Government misconduct by noting that the case was presented in the best tradition of advocacy by both sides and relaying to the jury that any statements to the contrary were simply the product of the normal stress of the case.

10

## III.

For the foregoing reasons, Defendant requests this Honorable Court to enter an Order dismissing the Fourth Superseding Indictment because it violates the Fifth Amendment's Double Jeopardy Clause.

Respectfully submitted,

**FEDERAL DEFENDER OFFICE**
Legal Aid & Defender Assn., Inc.

s/ Richard M. Helfrick, P33323 (w/consent)

s/ James Gerometta, P60260
Attorneys for Mr. Koubriti
645 Griswold, Ste. 2255
Detroit, MI 48226
Phone: (313) 961-4150
E-mail: james_gerometta@fd.org

Dated:  July 28, 2005

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

           Plaintiff,          Cr. No.  01-80778

  vs.

                                  Hon. Gerald E. Rosen

KARIM KOUBRITI,

           Defendant.

_____/


## CERTIFICATE OF SERVICE


I hereby certify that on July 28, 2005 , I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following:

                        Alan Gershel
                        Eric Straus
                        Assistant U.S. Attorneys
                        United States Attorney's Office
                        211 W. Fort, Suite 2001
                        Detroit, MI  48226


                        s/ James R. Gerometta (P60260)