

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CRIMINAL ACTION
NO. 01-CR-80778

YOUSSEF HMIMSSA,

Defendant.

_____/

SENTENCING HEARING
BEFORE THE HONORABLE GERALD E. ROSEN
United States District Judge
831 Theodore Levin U.S. Courthouse
231 Lafayette Boulevard West
Detroit, Michigan
September 1, 2005

APPEARANCES:

For the Government:       MR. ERIC STRAUSS, ESQ.
                          Assistant United States Attorney

For the Defendant:        MR. STEPHEN T. RABAUT, ESQ.,

— — —

*Suzanne Jacques, CSR, RMR*
*Official Court Reporter - U.S. District Court*
*313-964-5121*

# I  N  D  E  X

**Proceeding**                                                                        **Page**

Sentencing Hearing                                                                        3

# E X H I B I T S

**Exhibit No.**                                                    **Offered**    **Received**

Detroit, Michigan

September 1, 2005

4:07 p.m.

-     -     -

THE CLERK:  United States versus Youssef Hmimssa, 01-80778, Eastern District of Michigan; 01490, Northern District of Illinois; and CR-0215, Northern District of Iowa.

THE COURT:  Appearances please.

MR. STRAUSS:  Yes, Your Honor, on behalf of the United States, Eric Strauss, assistant U.S. attorney.

MR. RABAUT:  Good afternoon, Your Honor, may it please the Court, Stephen Rabaut on behalf of Mr. Hmimssa.  He is present with me in court.

THE COURT:  All right.  This is the time and date set for sentencing in these consolidated cases.  It is, I don't think, necessary to recount the lengthy and rather troubled history of this case.  There has been a revised plea agreement prepared and entered into between the parties that I want to make sure is reflected on the record and make sure that Mr. Hmimssa understands the provisions of the plea agreement, as they are substantively different than his earlier plea agreement.

Mr. Rabaut and Mr. Strauss, do you want to put that on the record?

*USA -v- Youssef Hmimssa*

9/1/2005   Sentencing Hearing

MR. STRAUSS:  Certainly, Your Honor.  By way of history, Your Honor, at some point in time, after Mr. Hmimssa pled, the probation department, based on some additional information, recalculated the guidelines in this case to be 63 to 78 months, which was in conflict with the original stipulated sentencing guideline range of the original plea agreement that was entered into in April of 2003, in which case, Paragraph 3(b) of the original plea agreement would allow Mr. Hmimssa to withdraw his guilty plea, and if he did not exercise that right, he acknowledged that the Court would have the opportunity to sentence above or below that particular stipulated sentencing guideline range.

Consistent with that, Your Honor, the parties have prepared a three-page document entitled Defendant's Waiver of His Right to Withdraw His Guilty Plea Pursuant to Paragraph 3(b) of the Rule 11 Plea Agreement.  I have a signed copy, I believe a signed copy has been given to the Court.  We ask that the Court enter this written waiver into the public record, and also deem it part and parcel of the original Rule 11 Plea Agreement.

THE COURT:  Mr. Rabaut, have you had an opportunity to review this with Mr. Hmimssa?

MR. RABAUT:  Yes, Your Honor, I have.  I'd like the record to further reflect that the original Rule 11

*9/1/2005   Sentencing Hearing*

agreement provided a sentence guideline range of 37 to 46 months.  The newly calculated range is 63 to 78 months. Mr. Hmimssa and I sat down and thoroughly discussed this matter, the change in the guidelines, and in light of all that, Mr. Hmimssa would still like to proceed with sentencing under the new guideline range.  It is his understanding that he would be sentenced within that guideline range.

Judge, I have further informed Mr. Hmimssa that the government, although they previously filed a motion for downward departure, they were also withdrawing that motion, they were not going to seek a downward departure on behalf of Mr. Hmimssa.  He is aware of that.  And in that light, he's ready to be sentenced within that guideline range.

THE COURT:  All right.  Anything, any allocution before I proceed to sentence?

MR. RABAUT:  Judge, what I'd like to add is that Mr. Hmimssa and I have thoroughly reviewed the Presentence Investigation Report in this matter.  The report was prepared in November of 2003.  He and I have reviewed it.  It is factually accurate.  We do not have any additions, deletions or corrections to it other than he has been incarcerated from his first date of arrest to this very date.  I think there's a paragraph which would

*USA -v- Youssef Hmimssa*

*9/1/2005   Sentencing Hearing*

indicate it was up to the date in November, but anyway, it's been significantly longer now.

Judge, there isn't a lot to say in this matter. Mr. Hmimssa and I have talked about it at length.  He would like to get this matter behind him.  He has spent numerous hours on the witness stand, he ascribes to what he testified to, and he's ready for the Court to impose sentence at this time.

THE COURT:  Mr. Strauss.

MR. STRAUSS:  Just briefly, Your Honor.  I would note that -- the government would note that Mr. Hmimssa has pled to what I count as ten separate offenses involving fraud and deceit.  The Court has read the presentence report, the government has read the presentence report, has no changes or deletions.

THE COURT:  I think it's actually eleven counts; eight of them in the Illinois case, two of them in this case, and one of them in the --

MR. STRAUSS:  Suffice it to say the --

THE COURT:  Suffice it to say it's a considerable record.

MR. STRAUSS:  That's correct, Your Honor, and as such, the government would request that the Court sentence Mr. Hmimssa to a sentence of 78 months, which is the top of the applicable guideline range.

*USA -v- Youssef Hmimssa*

*9/1/2005  Sentencing Hearing*

THE COURT:  Mr. Hmimssa, before the Court imposes sentence, do you wish to address the Court?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Well, I've got a few things to say. I'm not going to belabor it, but Mr. Hmimssa, I must tell you, it is obvious to the Court that you and truth are complete strangers to each other.  You are a very bright, very articulate, very clever man --

THE DEFENDANT:  Thanks.

THE COURT:  -- and I think it's a shame that you've chosen not to put your considerable talents to a productive and lawful use.  By my count, just as Mr. Strauss was not able to add up all the various counts readily, by my -- I may be wrong on this, so I may have the number wrong, I was keeping track during the trial testimony, and by my count, my recollection is, by your own admission, you've lived in at least five different countries under 10 or perhaps 12 different names.  I would certainly not be surprised if there were more aliases and more countries, but that was just by your own testimony.

You are, as I've indicated, a man of considerable talents and considerable facility, and considerable ability with -- in areas that have great potential for you to have maximized your life and your productivity in

*USA  -v-  Youssef  Hmimssa*

a legal way; however, for whatever reason, you chose not to.  I believe, sir, you are a pathological liar because you are one of the most effective liars I've ever seen.

On December 12 of 2003, you sat on that witness stand and I asked you if you had ever talked to Butch Jones about your case.  You told me you had not.  When I conducted a hearing with Butch Jones and when I read his notes, his handwritten, contemporaneous notes of what Butch Jones said that you told him, it was patently obvious to me that not only had you discussed the case with him, but you had discussed the case in great detail.  In fact, much of what was in Mr. Jones' notes tracked almost precisely much of what you testified to on the stand eight months later.  The only way Mr. Jones could possibly have known what you said, what he had written down in his contemporaneously-made notes, was if you had told him.  It's the only possible way because your testimony was not until much later.

So, at the very least, you sat on the stand at the December 12, 2003 hearing and lied to me.  I believe you also lied during the course of the trial.  You may have made a living for a long time through lies and deceit, but I want you to know that in this country, in this legal system, we take it very seriously.  When somebody gets up on the stand and commits perjury, that's

*9/1/2005    Sentencing Hearing*

a serious matter, particularly in direct response to a question from a federal judge.  That's a very serious matter.  This isn't some minor petty identity theft in a taxi cab in Chicago or in a restaurant, this is a United States District Court in which the sanctity of law and the sanctity of the oath that a witness takes is of the highest level, and you violated that.

In going over the calculations and your sentencing guidelines, I noted that the probation officer did not include a two-level enhancement in this case for obstruction of justice arising out of your perjury.  I intend to find that, and I intend to make a finding that you committed perjury at the very least at the December 12 hearing, and accordingly, I am enhancing you two levels for obstruction of justice in this case.

Now, as it happens, because of the multi-count adjustment, that does not affect the guideline sentence. The bottom line on the guideline sentence is still the same.  Your guidelines are 63 to 78 months.  But it certainly, along with your other conduct, informs the court's sentence as to where your sentence should be in the guideline range.

In addition, sir, you should know that the reason why your plea agreement had to be redone was because I informed your lawyer and the government's lawyer that I

*9/1/2005    Sentencing Hearing*

would not give you any reduction in sentence for your alleged cooperation with the government because I did not find your testimony to be truthful or reliable.

To a great extent, Mr. Hmimssa, the government's terrorism case against these defendants relied upon your testimony.  There was certainly corroborative evidence, but it was thin.  Your testimony formed the basis of the government's case, and that's a serious matter.  For all the reasons that I'm sure you understand and know about, the Court was required to dismiss with prejudice the terrorism counts against those defendants, two defendants who were convicted, and the Court takes that trespass upon the law by you, and your untruthful testimony in that case very seriously.  I'm sure Mr. Rabaut informed you that because of my strong feelings in this matter, I was not prepared to give you any credit for your testimony in that case.

All I can tell you, sir, is that when you complete this sentence, you will be deported to Morocco, you'll be deported under your name now that we have, Youssef Hmimssa.  I've asked my probation officer to check to see if he could verify that in fact that is your name, and he was unable to do that.

Now, that in part is due to the fact that we apparently do not have the kind of governmental

*USA  -v-  Youssef  Hmimssa*

relationship with the government of Morocco that would allow complete and full records check to ensure that that was your name.  But I still have some doubt in my mind as to whether that is your true identity, and indeed, I must tell you, sir, I wonder if you even know who you really are.  You've lived under so many different names, so many different deceits in so many different countries, in so many different contexts, so many different people, I wonder if you even know who you are at this point.

So to some extent, I'm not sure it even matters what name I sentence you under.  This is the name you're going by now, it's the name you'll be sentenced under, and it's the name you'll be deported to Morocco with.  But I can tell you this, if you ever try to come back into this country under the name of Youssef Hmimssa or any other name, and you're caught, the penalty will be severe.

Because of my respect for your talents in this area, I have no doubt that you probably would be able to effect another identity.  You might even be successful in coming back to this country.  But I want you to know that if you do come back after your period of incarceration under the name Youssef Hmimssa or any other name, and if you're caught, the sentence will be severe because this transcript will follow you around.

I don't know what else to tell you, Mr. Hmimssa, but this has been a, in my career on this bench, it has been one of the most outrageous performances I've ever seen.  It's only through fortune, integrity of some lawyers in the U.S. Attorney's Office, and the persistence of the special prosecutor and the special counsel that was appointed in this case to investigate that your handy work did not result in a serious miscarriage of justice.

I thought long and hard over whether to accept this revised plea agreement because, frankly, even the sentencing guideline range of 63 to 78 months seems inappropriate and inadequate to address the havoc that you've wreaked in the judicial system.  But I'm also realistic, and I also understand that there is a benefit to be had for the system to put this behind us, to keep you behind bars for an even longer period of time that you've already been behind bars, so you, for at least that period of time, you won't be practicing your arts on.

I also recognize the practicalities and difficulties that the government would have in putting its case together in all three jurisdictions in a consolidated way and proving it, and when I balance all of these interests, I find that the plea agreement, the

revised plea agreement, the range of 63 to 78 months, although as I've said is probably an inadequate sentence to address your conduct in this case, I find that it serves the ends of justice appropriately enough for the Court to agree to accept the revised plea agreement.

Accordingly, I'm going to sentence you in accordance with the plea agreement, but I want you to know, sir, that in the end, I don't think you fooled anybody.  It's just a tragedy that we're at the point that we're at, and only good fortune that the Court was able to correct the miscarriage of justice that you contributed to.

I'm going to sentence you on all three cases in a consolidated sentence, so it will take some time to go through the sentence.

In the matter of the United States of America versus Youssef Hmimssa, I'm going to start with the case brought in the Northern District of Illinois which is docket number 01-CR-490 from the Northern District of Illinois.  With respect to Count 1 of that indictment, it is the Court's judgment that the defendant be committed to the custody of the Bureau of Prisons for 60 months with respect to Count 1.  My sentence on Count 1, 60 months, only because that's the statutory maximum on that count.

*9/1/2005   Sentencing Hearing*

With respect to Counts 2, 3, 5, 6 and 8, it is the Court's judgment that the defendant be committed to the custody of the Bureau of Prisons for a period of 78 months on each of these counts, to be served concurrently with that imposed with respect to Count 1.

With respect to Count 7 of this indictment, it is the judgment of this Court that the defendant be committed to the custody of the Bureau of Prisons for a term of 36 months.  This sentence will run concurrent. This sentence is imposed under all of the other counts. Again, the Court sentences the defendant to 36 months because that is the statutory maximum permitted.

With respect to docket number CR490, the defendant will make restitution to the victims of this identity fraud, these identity fraud offenses, in the amount of $180,442.02.  Given the history here, the Court orders that any restitution that is made be made in certified funds.  Restitution is due immediately.

While in custody, the court orders that the defendant participate in the inmate financial responsibility program, the court-approved payment plan utilized by the Bureau of Prisons, and orders the defendant's compliance with that.

I'm going to waive the imposition of fine or cost of incarceration or supervision due to the defendant's

*USA  -v-  Youssef Hmimssa*

lack of resources and his restitution obligation.

With respect to Count 1 through 3 and Counts 5 through 8 of this indictment, the law requires a special assessment of $100 on each count, totaling $700. That is due and payable immediately.

With respect to the counts of conviction 1 through 3, 5, 6, and 8, following the defendant's term of imprisonment, he will be placed on a three-year term of supervised release on each count, to run concurrently. With respect to Count 7, the defendant will be placed on a term of supervised release of one year; that, too, will run concurrently. Again, that is the maximum term of supervised release.

Turning now to the indictment in this court, docket number 01-CR-80778, with respect to Counts 1 and 2, it is the judgment of this court that the defendant be committed to the custody of the Bureau of Prisons for a term of 70 months on each count. In addition, pursuant to Title 18 of the United States Code, Section 3147, the Court sentences the defendant to four additional months on each count, to be served consecutively to the sentence of 70 months imposed on Counts 1 and 2. The 70 month sentence on Counts 1 and 2 will run concurrent to each other. With respect to the additional eight months, four months will run consecutive to the count imposed to -- to

the sentence imposed with respect to Count 1, and four months will run consecutive to the sentence imposed with respect to Count 2.

Again, I'm going to waive the imposition of any fine or costs of incarceration and supervision due to the defendant's lack of resources, and the restitution order imposed with respect to the Northern District of Illinois sentence.

The law requires a special assessment as to each count of conviction in this indictment. There are two counts of conviction for a total of $200. They are due and payable immediately.

With respect to Counts 1 and 2 of this indictment, following the defendant's term of incarceration, he will be placed on a three-year term of supervised release on each count, and all supervised release terms will run concurrently.

With respect to docket number CR 0215, the indictment out of the Northern District of Iowa, it is the judgment of this Court that the defendant be committed to the custody of the Bureau of Prisons for a term of 52 months. In addition, pursuant to Title 18 of the United States Code Section 3147, the court imposes a sentence of eight months which will be served consecutive to the 52 month sentence in this count. The sentence

*9/1/2005   Sentencing Hearing*

imposed under Count 1 of this indictment will run concurrent to the sentences imposed on both the Northern District of Illinois case and the case arising out of this district.

Again, I'm going to waive the imposition of any fine or costs of incarceration or supervision due to the defendant's lack of resources, and the restitution obligation the Court has imposed with respect to the Northern District of Illinois case.

The law requires another assessment of $100 per conviction, for a total of $100. That also is due and payable immediately.

With respect to this count of conviction, the defendant will be placed on a three-year term of supervised release which will also run concurrent to all the other terms of supervised release.

I am imposing, with respect to each of these sentences, the mandatory drug testing provisions. The defendant will abide by, with respect to the, all of the convictions, all of the standard conditions of supervised release which have been adopted by the United States District Court for the Northern District of Illinois, the Eastern District of Michigan, and the Northern District of Iowa.

In addition, the Court imposes the following

*USA  -v-  Youssef  Hmimssa*

special conditions:  First, the defendant will pay any special assessment and/or restitution balance still owing at a rate and schedule to be recommended by his probation officer and approved by the Court.  Second, the defendant will not incur any new credit charges or open any additional lines of credit under any name without the approval of his probation officer.  The defendant will provide his probation officer with access to any requested financial information.  If deported, the defendant will not reenter the United States without permission of the proper authorities.

I believe as part of the plea agreement, Mr. Hmimssa waived his appeal rights.  Is that correct?

MR. STRAUSS:  That's correct, Your Honor.

THE COURT:  Assuming that the Court sentenced within the plea agreement, the Court has sentenced within the plea agreement, so Mr. Hmimssa, you have no appellate rights.

This closes another chapter in this very troubled case.  Anything further from counsel?

MR. STRAUSS:  Nothing further from the government, Your Honor.

MR. RABAUT:  Your Honor, may I make one inquiry? I don't know if the Court stated it and I didn't hear it, or didn't state it, but the sentence out of the Eastern

*9/1/2005   Sentencing Hearing*

District of Michigan, is that also concurrent with the other sentences?

THE COURT:  I think I made that clear, but if I didn't, it is to run concurrent.  All right.

MR. RABAUT:  Thank you, Your Honor.

THE COURT:  Anything else?

MR. RABAUT:  No, sir.

(Proceedings concluded

4:35 p.m.)

—   —   —

9/1/2005   Sentencing Hearing

CERTIFICATE OF COURT REPORTER


I certify that the foregoing is a correct transcript

from reported proceedings in the above-entitled matter.


_____        _____

SUZANNE JACQUES, CSR, RMR                        Date
Official Court Reporter
Eastern District of Michigan

USA -v- Youssef Hmimssa