UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                CRIMINAL NO. 01-80778

v.

                                HON: GERALD E. ROSEN

D-1 KARIM KOUBRITI,

        Defendant.

                           /

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOURTH SUPERSEDING INDICTMENT ON DUE PROCESS GROUNDS AND DEFENDANT'S MOTION FOR DISCOVERY RE: INDEPENDENT INVESTIGATIONS AND SUPPORTING BRIEF**

ARGUMENT

WHERE: (1) THERE IS NO EVIDENCE THAT A NEW SUPERSEDING INDICTMENT ON DIFFERENT CHARGES IS THE PRODUCT OF ANY PREVIOUSLY ACKNOWLEDGED TRIAL MISCONDUCT ON A PRIOR INDICTMENT; (2) THERE IS NO EVIDENCE OF ANY MISCONDUCT RELATING TO THE NEW INDICTMENT AND INVESTIGATION; AND (3) DEFENDANT CANNOT SHOW, OR EVEN ALLEGE, ACTUAL PREJUDICE, THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND FOR DISCOVERY RE: INDEPENDENT INVESTIGATIONS SHOULD BE DENIED.

I. Introduction

Defendant has moved pretrial for dismissal of the Fourth Superseding Indictment

under the Due Process Clause of the Fifth Amendment ("Outrageous Government Conduct")

and the Court's Supervisory Power.  Factually, the defendant relies solely on the prior government acknowledged misconduct during the trial of the defendant on the now voluntarily dismissed Third Superseding Indictment.  Defendant has also simultaneously requested broad disclosure of any case related misconduct discovered in any "independent investigations" of the former Assistant U.S. Attorney assigned to the original case[1].  In neither motion does defendant claim (nor is there any evidence) that the Fourth Superseding Indictment is based on any government misconduct[2].

Instead, and quite simply, the defendant's argument for both dismissal and access to additional ongoing investigative materials appears to be that the magnitude of the original misconduct, regardless of whether there is any connection to the new indictment, would form the basis for dismissal - a position not supported by the case law cited in defendant's motion. Moreover, and perhaps more fatally than the lack of connection to the prior alleged misconduct is the fact that defendant nowhere alleges, nor can he conceivably show, that he has been prejudiced.  Accordingly, for these reasons, defendant's motion to dismiss

---

[1]    Defendant does not differentiate between "Brady/Giglio" material specific to the instant indictment - which the government acknowledges a duty to disclose - and material, albeit now irrelevant, which was either otherwise discoverable for purposes of the prior indictment, or any other unrelated misconduct.

[2]    Indeed, the defendant has been provided all of the records generated in the investigation relating to the Fourth Superseding Indictment, been permitted to review substantially all of the FBI FD-302 Memoranda of Interviews, been earlier provided all undisclosed discovery pursuant to the Court's June 2004 disclosure order, and further provided with the grounds and rationale for the government's decision to dismiss and agree to a new trial on the Third Superseding Indictment   Despite this volume of material, the defendant has failed to show, or even allege, any connection between any prior alleged misconduct and the investigation relating to the present indictment.

indictment is without merit and should be denied.

## II.  Supervisory Power

The power of a district court to dismiss a grand jury indictment under the supervisory powers doctrine is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice.  United States v. Streebing, 987 F.2d 368 (6th Cir. 1993).  The court's supervisory power may be used to vindicate a defendant's rights, as well as preserve judicial integrity and/or to deter illegal or improper conduct.  United States v. Hasting, 461 U.S. 499, 505 (1974).

While a court may use its supervisory power to dismiss an indictment, dismissal is, generally speaking, a disfavored remedy.  United States v. Rogers, 751 F.2d 1074(9th cir. 1985).  To warrant dismissal, the government's misconduct must not only be flagrant, but also have prejudiced the defendant.  Bank of Nova Scotia v. United States, 487 U.S. 250 (1988).  As the Supreme Court pointed out in Bank of Nova Scotia, "where the error is harmless, concerns about the 'integrity of the [judicial] process' will carry less weight" Id. At 255 (quoting United States v. Hasting, 461 U.S. at 506).  Likewise, the Sixth Circuit in United States v. Smith, 687 F.2d 147 (6th Cir. 1982) has held that "[i]n order for this court to order dismissal of an indictment as part of its supervisory powers, there must be a showing of 'demonstrated and longstanding prosecutorial misconduct' as well as a showing of 'prejudice to the defendant.'" Id. At 152-53.  It follows then in this case, that in order for defendant Koubriti to show that he has been prejudiced, he must show that the earlier alleged

3

misconduct was not remedied, or that there is some identifiable and isolated previously tainted evidence that the government seeks to use against him in a trial on the new charges. He has not done this.

Here, the Third Superseding Indictment was dismissed voluntarily by the government upon discovery of significant failures of the original prosecution team to fulfill its discovery obligations to the Court and the defense.   A new and different prosecution team acknowledged these failures.  The government's self-imposed remedy was not merely setting aside the verdicts, but ultimately involved a complete dismissal of the indictment.  It does not follow under these circumstances that "integrity of the judicial process" and deterrence of improper conduct are interests that would be furthered by essentially extending immunity from prosecution to unrelated and untainted charges.  This is especially true where the proximate harm occasioned by the misconduct has already been remedied by the earlier government dismissal of the misconduct tainted charges.  Under these circumstances, the extraordinary remedy of dismissal under the Court's supervisory power is clearly not justified.

### III.  Due Process

A court may also dismiss an indictment when "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction,..." United States v. Russell, 411 U.S. 423, 431-32 (1973).  To constitute a Fifth Amendment violation under Russell, the government conduct at issue must be fundamentally unfair and " 'shocking to the universal sense of

justice,' mandated by the Due Process Clause of the Fifth Amendment." Russell, 411 U.S. at 432.

"[T]he determination of when the government's behavior reaches such a 'demonstrable level of outrageousness' to constitute a due process violation is 'at best elusive.'" United States v. Bogart, 783 F.2d 1428, 1435 (9th Cir. 1986), vacated on other grounds. Whether outrageous government misconduct exists turns on the totality of the circumstances. United States v. Tobias, 662 F. 2d 381, 387 (5th Cir. 1981), cert. denied, 457 U.S. 1108 (1982).

Defendant cites United States v. Marshank, 777 F. Supp. 1507 (N.D. Cal. 1991), a district court decision, in support of a broad argument seemingly suggesting that notwithstanding the lack of connection between a tainted initial set of charges and a second subsequent set of charges, dismissal is an appropriate remedy. Defendant's reliance on the Marshank decision, along with a Sixth Circuit decision in United States v. Valencia, 541 F.2d 618 (6th Cir. 1976), is misplaced however. A more careful examination of both decisions, and in particular, the underlying facts, reveals that the Valencia court's statement regarding later reindictment on charges which "grow out of the same dealings that were subject of the [prior] charges," must be considered against the backdrop of the facts in both cases.

For instance, in Marshank, the court pointed out that "the taint of the government's constitutional transgression infected every part of the investigation and prosecution of the defendant." Marshank, 777 F.Supp at 1522. Further, the court observed that "[t]he taint of the government's transgressions spreads to all the evidence obtained against Marshank." Id.

5

at 1521. Indeed, the entire case against an attorney's client, including the later charges, were developed through perhaps one of the most extraordinary and astonishing government collaborations with that attorney.  In the instant case, no such causal relationship, or taint exists[3].

Likewise, in Valencia, another case involving intrusion into the attorney-client relationship, and far from ignoring the issue of taint, the Sixth Circuit specifically remanded the case to the district court to "determine the extent of the taint resulting from the improper prosecutorial tactics and the appropriate disposition." Valencia, 541 F.2d at 623.  While the Valencia court acknowledged that it would not hesitate to set aside the convictions, if the convictions were affected by the government conduct, it believed that "no necessary inference of prejudice with respect to appellants can be made on the basis of the government's intrusion into the privileged relationship between attorney and client." Id. at 622.  Emphasizing the need the show prejudice, the case was remanded.

Although relied upon by the defendant, both the Marshank decision and the Valencia decision actually support the government's position that it is incumbent upon the defendant to show that he has been prejudiced and that evidence in support of the Fourth Superseding Indictment is tainted.  The defendant has failed to meet this burden.  Instead, in seeking access to additional materials concerning misconduct, and referencing the prior

---

[3]    It bears repeating that how the government developed the charges encompassed by the Fourth Superseding Indictment is no secret to the defendant. For the most part, as can be seen from the early discovery in this case, the investigation was conducted and completed in the Fall of 2004, long after the events that formed the basis of the earlier voluntary dismissal.

acknowledged misconduct, the defendant mistakenly emphasizes the perceived egregiousness or magnitude of the prior government conduct, while ignoring the question of whether any relationship exists to the subsequent indictment.  In sum, under the standards detailed above, the level of the prior unrelated misconduct is irrelevant.

Having shown no prejudice or taint, it can hardly be said that defendant Koubriti's Due Process rights were violated by the latest indictment.  Accordingly, the defendant's request for dismissal on the alternative basis of "Outrageous Government Conduct" is likewise without merit.

### IV.  Conclusion

For all the above reasons, defendant's motions should be denied.

Respectfully submitted,

STEPHEN J. MURPHY
United States Attorney

ALAN GERSHEL
Chief, Criminal Division

s/Eric  M. Straus
ERIC M. STRAUS (38266)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2200
Detroit, MI 48226
(313) 226-9648
E-Mail: eric.straus@usdoj.gov

7

Dated: <u>February 2, 2006</u>

## **CERTIFICATE OF SERVICE**

I certify that on February 2, 2006, I electronically filed the foregoing document with

the Clerk of the Court using the ECF System, and I hereby certify that I have mailed by

United States Postal Service the document to the following non ECF participant:

> Richard M. Helfrick
> Federal Defender's Office
> 645 Griswold Street, Suite 2255
> Detroit, MI 48226

> > <u>s/Eric M. Straus</u>
> > ERIC M. STRAUS (38266)
> > Assistant U.S. Attorney
> > 211 W. Fort Street, Suite 2200
> > Detroit, MI 48226
> > (313) 226-9648
> > E-Mail: eric.straus@usdoj.gov

Dated: <u>February 2, 2006</u>